[Crim. No. 4365. In Bank. Jan. 28, 1942.]

THE PEOPLE, Respondent, v. STEVE CRIMM, Appellant.

Benjamin D. Frantz and Roy Daily for Appellant.

Earl Warren, Attorney General, and J. Q. Brown, Deputy Attorney General, for Respondent.

THE COURT.—The appellant Crimm and three other inmates of Folsom Prison were jointly charged with the murder of one Fred E. Smith, also an inmate, in an information filed by the District Attorney of Sacramento County. Each defendant entered a plea of not guilty. Early in the trial Crimm's motion to change his plea to one of guilty to a charge of manslaughter was denied. At the conclusion of a protracted trial the jury returned separate verdicts finding Crimm guilty of murder of the first degree, without recommendation, and finding each of the three codefendants not guilty. Crimm prosecutes this appeal from the judgment imposing the death penalty and from the order denying a new trial.

The deceased, an elderly inmate, was found dead on December 28, 1940, in his cabin on "flower garden hill," a portion of the prison premises where he was engaged in gardening. His head and body had many lacerations and knife wounds, which the prison doctor testified had caused death. Early in the trial Crimm took the stand as a prosecution witness and related a story that implicated him and the codefendant Ferrow as "look-outs" and codefendants Freeman and Walker as the actual perpetrators of the homicide. He declared that the four of them met pursuant to previous agreement and proceeded toward the deceased's cabin for the purpose of permitting two of the group to settle certain grievances with deceased. Crimm and Ferrow assertedly remained near the cabin while the other two approached and entered the cabin. Crimm testified that he heard scuffling in the cabin. He approached the cabin, peered into it, and saw the deceased on the floor covered with blood. His assailants stood near him and a "bloody axe" lay on the floor. The four left the scene, and Crimm testified, they exchanged trousers shortly thereafter to facilitate the disposition of those that were blood-spattered. In narrating this version of the homicide, Crimm admitted that he had engaged in an earlier conversation with Ferrow as to how deceased could be "gotten rid of" and that he had "an idea" why they went to the deceased's cabin on the day of the homicide. Each of the three codefendants took the witness stand in his own defense and denied participating in the murder. In addition, defendant Walker repudiated an earlier confession to the warden on the ground that it was made

solely to ascertain the effect of Crimm's story to the warden implicating the four defendants.

It would serve no useful purpose to narrate a number of circumstances tending to support the appellant's first version of the homicide. The jury by its several verdicts convicting the appellant alone and acquitting the codefendants apparently rejected that version and accepted as true appellant's second version, given at a later point in the trial, wherein he declared that he alone, unassisted by others, had murdered the deceased. On the last day of the trial, Crimm, recalled as a witness for the defendant Freeman, took the stand and freely admitted that he alone had perpetrated the murder as the result of a dispute with the deceased over a narcotic deal. He repudiated his first version of the homicide and exonerated his three codefendants of any knowledge of or participation in the killing.

After deliberating more than five hours the jury returned verdicts finding Crimm guilty as charged and exonerating the several codefendants. There is no merit in the contention that the evidence is insufficient to support Crimm's conviction. Aside from the innocence or guilt of the others, either of Crimm's versions of the homicide points to his guilt as a principal in the death of the deceased. Whatever confusion arises from his conflicting stories does not serve to establish his innocence.

Likewise without merit is the contention that "the jury was not a lawful jury" because made up of men alone. In so contending, appellant concedes that "all of the reported decisions seem diametrically opposed to the theory" advanced by him. Examination of the record discloses that at the beginning of the trial it was stipulated between the several counsel representing the defendants and the district attorney that all female members of the panel should be excused and that the jury should be made up of male members only because of the probable nature of the testimony. In addition to the stipulation of counsel, each defendant personally consented to be tried by a jury without women. In response to a question of the trial court whether it is "satisfactory to you and do you desire to be tried before a jury upon which there will be no women," the appellant Crimm responded, "It is." Under the circumstances, appellant may not now successfully challenge the jury.

■ It is next contended that the record fails to disclose that the jury was present at all stages of the trial. There were numerous recesses during the trial. When the court would reconvene the trial judge would inquire if it was stipulated that the jurors were all present and in their places. Two or more counsel so stipulated on each occasion. Because appellant's counsel made an audible stipulation on only three occasions, it is argued that "the record is entirely silent upon the matter of whether or not the jury ever did return after any particular recess." Two or more counsel, however, did stipulate to the presence of the entire jury, and the entire jury was present at all stages of the proceedings. Nowhere is it charged that the jury or any part thereof was absent at any time when its presence was required.

■ There is neither error nor prejudice in that part of the district attorney's closing argument challenged by the appellant. The prosecuting officer was free to discuss the conflict in the two stories related by appellant and to advance any reasonable motive therefor.

■ The fact that during a recess of court appellant first related to defense counsel other than his own the story that he alone had perpetrated the homicide does not require a reversal. Before the reconvening of the court his own counsel was likewise so advised. The court upon being informed of appellant's change of testimony took every precaution to protect him from pursuing an ill-advised course. The court admonished the appellant in the following manner: "Now, you understand, Mr. Crimm, that you are now testifying in the case where you are accused of the crime of murder, and if you make any statements, they must be freely and voluntarily; if you give any testimony here, it must be freely and voluntarily, with the understanding that you are now on trial for the murder of the deceased in this case. And anything that you say, of course, would be considered by this Jury in the matter of determining your innocence, as well as by the Jury in the event that they find that you are guilty of the crime of murder in the first degree; it would also be considered by the jury in determining the amount of punishment that you would receive. Now you have your counsel, Mr. Artz, who has been appointed by this Court, and you have been accorded all of the rights that the law provides for a man charged with crime. I would suggest that you

be very careful, that you tell the truth, that you be not guided by anything except the absolute truth, and aside from that, you are not required to testify against yourself unless you so desire."

In the face of this advice by the court the appellant proceeded to relate the story that implicated him as the sole perpetrator of the murder. He testified further that he had no desire to see innocent persons suffer and that his change of story was entirely voluntary and not the result of fear or duress. Appellant's counsel cross-examined him with respect to the new story and at no time requested a continuance to permit further consultation between client and counsel. At all times appellant had the advice and assistance of counsel and the circumstances surrounding the revised story in no way suggests, as contended, "a denial of due process of law."

An examination of the entire record reveals nothing in the rulings on the evidence or in the giving or refusing of instructions that requires a reversal.

The judgment and order are affirmed.

Appellant's petition for a rehearing was denied February 26, 1942. Houser, J., did not participate therein.