[Crim. No. 2191.  First Dist., Div. Two.  Mar. 18, 1942.]

THE PEOPLE, Respondent, v. HOMER VIVIAN, JR., Appellant.

Raine Ewell for Appellant.

Earl Warren, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

STURTEVANT, J.—Homer Vivian, Jr., was charged by

information, tried, and convicted of violating section 261 of the Penal Code, statutory rape, upon the complaining witness, Dorothy May Kirby, a girl about fifteen years of age and who was not the wife of the .defendant. He made a motion for a new trial. His motion was denied and he appealed from the judgment and order.

The information alleged the offense took place on the 12th day of August, 1940. It also charged the defendant with three prior convictions of felonies: the first, on October 25, 1935, in the United States District Court in the State of Texas for violation of the Dyer Act (18 U. S. C. A., sec. 408); the second, on June 10, 1939, in the Superior Court of the State of Florida, of the crime of forgery; and third, in the Superior Court of this State of the crime of forgery. The last mentioned offense is discussed in the case entitled *People* v. *Vivian,* 46 Cal. App. (2d) 163 [115 Pac. (2d) 559]. The instant case is closely connected in point of time with the cited case. The defendant admitted all of the priors, entered a plea of not guilty to the charge of rape and was tried thereon.

Dorothy May Kirby, the prosecutrix, hitch-hiked from her home in Missouri to Los Angeles in the month of June or July of 1940, where she stopped with her mother for two or three weeks. While there she was employed at the Casino on Main Street under the name of Dorothy Humphries as a taxi dancer; she gave her age there as twenty-two years. She then came to Oakland, where she was employed as a waitress and part of the time as a taxi dancer at the Broadway Academy under the name of Jean Garrison. Here she stated her age to be twenty-two. She then secured employment at the Marino Club on Ellis Street, San Francisco, as a B-girl, under said name of Jean Garrison. She was paid a salary and received a commission on the drinks men purchased. She had been there a week when she met appellant; it was the night of the 12th of August, 1940. He asked her to dance with him, which she did. He invited her to become his partner at a Walkathon. From the Marino Club that night they went to a cafe, where they had something to eat, after which they went to the Walkathon and, at about 2 a. m., they drove to his apartment at 706 Polk Street. They were accompanied by his friend, Charlie Sinclair, whom she knew as Charlie. The apartment contained two rooms, a living room and kitchenette. There was a folding bed and a lounge. The prosecutrix and appellant retired and slept to-

gether on the folding bed that night and the succeeding night. On each of said nights he had sexual intercourse with her. The first night she was menstruating. He purchased some Kotex for her.

She earned from two to four dollars a night at the Marino Club, which, she testified, appellant took from her. Appellant purchased a pair of stockings, two pairs of step-ins, a slip and a suit of pajamas at Magnin's, where, on August 14, 1940, he was arrested by the police for forgery. Some time after 11 o'clock on the night of August 14th, he was taken to his apartment by the police to search for checks. On the arrival of the police they found the prosecutrix asleep on the lounge; she was alone. Under the name of Jean Garrison she was booked for vagrancy by the police and after a week in the City Prison she was turned over to the juvenile authorities, who finally placed her in the custody of her mother. To the juvenile authorities she gave her true name as Dorothy May Kirby and her true age as fifteen.

█ During the trial the defendant attempted to prove that the complaining witness had had sexual intercourse with other men but the objections of the prosecution were sustained. He now contends that such evidence was admissible as showing a want of credibility in the testimony of the complaining witness. But it was not admissible for that purpose. (*People* v. *Murphy,* 53 Cal. App. 474 [200 Pac. 484].)

█ Again he claims it was pertinent on the issue of consent. However, as she was only fifteen years of age, there was no such issue. (22 Cal. Jur. 375 "Rape," sec. 22.)

█ The defendant took the stand as a witness in his own behalf. He admitted convictions of three prior felonies. On cross-examination the district attorney asked questions tending to show that one felony was a violation of the Dyer Act (18 U. S. C. A., sec. 408), and the other two were forgeries. The defendant objected, claiming he could not be cross-examined on such matters. (Penal Code, sec. 1323.) He is mistaken. Such facts could properly be shown by cross-examination or the record of the judgments. (*People* v. *Soeder,* 150 Cal. 12, 20-21 [87 Pac. 1016].)

Before proceeding let it be noted that the defendant took the stand as a witness in his own behalf. He testified to all incidents occurring between the early part of the evening of Monday, August 12th, and extending to a time about 4 a. m. Wednesday, August 14, 1930, regarding the acts of himself,

of the prosecuting witness, and of his friend Charlie Sinclair. The defendant denied that he had had sexual intercourse with the prosecuting witness. He volunteered that he had made some purchases for her. He volunteered that he was writing checks and that both Charlie and Dorothy were broke. The defendant testified that he slept on a couch alone, but that Charlie and Dorothy slept together in the only bed in the apartment. He now complains because on cross-examination he was asked questions regarding the checks he wrote and the purchases he made for the prosecutrix. But we have not found any ruling that was made by the trial court which improperly extended the boundaries of the cross-examination of a defendant in a criminal action. (Penal Code, sec. 1323; *People* v. *Turco*, 29 Cal. App. 608, 610 [156 Pac. 1001]; *People* v. *D'Angelo*, 13 Cal. (2d) 203, 206 [88 Pac. (2d) 708].)

In his argument in submitting the case the district attorney asked the jury to so frame its verdict that the defendant would be sent to state prison and not to the county jail. He acted clearly within his rights. The punishment for the offense on trial is provided in section 264 of the Penal Code. Under certain facts the jury by its verdict is entitled to make recommendations to the court as to the punishment to be imposed. Under such circumstances it is quite clear that the district attorney was entitled to include within the scope of his argument what recommendation, if any, should be made by the jury.

No other point is stated, argued, and supported by authorities. Points not so presented need not be considered by a court of review. In *People* v. *McLean*, 135 Cal. 306 [67 Pac. 770], at page 309, the court said: "We again repeat what we have said before, that we will not examine alleged errors presented in this way. It is due to this court from the members of the bar to point out clearly and concisely the rulings complained of as erroneous and the reasons why they are so, with reference to authorities, if any. In case counsel will not take the trouble to do so, we shall deem the matter as of not sufficient importance to merit notice in an opinion. (*People* v. *Woon Tuck Wo*, 120 Cal. [294] 297 [52 Pac. 833].)" That passage is directly applicable to a number of contentions contained in the brief of the defendant.

The judgment and order appealed from are affirmed.

Nourse, P. J., and Spence, J., concurred.