[Crim. No. 1802.   Third Dist.   Sept. 30, 1942.]

THE PEOPLE, Respondent, v. CERING QUITORIANO et al., Appellants.

E. R. Vaughn and Geo. E. Foote for Appellants.

Earl Warren, Attorney General, and J. Quincy Brown, Deputy Attorney General, for Respondent.

ADAMS, P. J.—Defendants herein were charged with the crime of murder and found guilty of murder of the second degree. Motions for a new trial were denied and both defendants appealed. On the day set for hearing in this court defendants' counsel moved for dismissal of the appeal as to defendant Quitoriano and the motion was granted. The appeal as to defendant Avila was submitted without argument, on briefs to be thereafter filed.

The brief filed by counsel for defendant Avila consists of but two scant pages and cites no authorities. The only question raised is the sufficiency of the evidence to sustain the verdict as to this defendant. No adequate citations to the transcript are made nor is it pointed out in what respect the evidence is insufficient. Under such circumstances the court would be entirely justified in refusing to search the record for the purposes of an opinion. (*People* v. *Vivian,* 50 Cal. App. (2d) 533 [123 P. (2d) 613]; *People* v. *McLean,* 135 Cal. 306, 309 [67 Pac. 770].)

However, it is apparent from the evidence pointed out by counsel for the People that same was ample to sustain the verdict as to both defendants. The victim of the homicide was one Augustine Villairin, with whom defendant Avila had been, according to her own admission, on terms of sexual intimacy. At the time of the killing, Avila was living with defendant Quitoriano in a cabin at a camp near

Isleton. On December 15, 1941, decedent drove to Isleton from Suisun and joined Quitoriano and Avila at the cabin occupied by them. After lunching together in the cabin the three of them drove in decedent's car to Rio Vista where they visited at the home of friends until after 11 p. m. About that time defendant Avila left with the intention of hitch-hiking back to Isleton, and Quitoriano followed her. They were picked up on the highway, stopping on the way home to buy wine. After they had returned to their cabin decedent arrived there about midnight. As to what happened thereafter the testimony is conflicting.

Defendant Quitoriano made three statements, the third one being made jointly with Avila. Avila herself made three different statements before the joint one made with Quitoriano. All were made freely. In her first statement she averred that she shot Villairin; that she shot to kill him; that the gun with which she shot him belonged to her; that at the time decedent arrived Quitoriano had left the cabin in search of cigarettes; that decedent then stated that if he could not have her (Avila) no one else could, and that when he advanced upon her she shot him four times. Both she and Quitoriano admitted that the decedent did not draw a gun but that after he was killed they took a gun out of his overcoat pocket and put it into his right hand, where it was found when the officers arrived.

At the trial Alfred Silva, a watchman at the cabins, who knew both Quitoriano and Avila well and who lived in an adjoining cabin, stated that one of the shots came through his window and imbedded itself in his cabin; that after the shooting Quitoriano came over to his cabin and asked him to come over to the house and have a glass of wine; that when he arrived there he found Villairin dead and that Quitoriano said "Look at what my wife did"; that Avila then started to laugh; that she said that she had killed Villairin in self-defense when he was trying to attack her.

Edward Reyes, former chief of police at Isleton, testified that he received a call about three o'clock in the morning of December 16, 1941, from Quitoriano, and that he arrived at the cabin about five minutes later; that on his arrival he asked Avila what had happened and she stated that she had sent Quitoriano out for some cigarettes and after a while decedent came in and said he wanted her

and also that if he could not have her nobody else could; that thereupon she had reached underneath the bed and seized the gun and when decedent grabbed hold of her foot she had shot herself in the toe, and when Quitoriano came in she had shot him in the thigh; and that she then had pushed Villairin away and shot him; that she shot him four times and he said "Oh, Alice," as he went down.

The testimony further showed that defendant Avila was wounded in the toe and that a bullet had entered Quitoriano's thigh from the inside of the leg and was imbedded there. In a subsequent statement Avila was not sure whether she had shot herself or whether Quitoriano had shot her.

In her third subsequent statement to the officers she apparently attempted to change her testimony, and then stated that there was an argument between decedent and Quitoriano which occurred prior to the shooting; that Quitoriano had done the shooting and that when the first shot was fired she had crawled under the bed. In one statement she said that she was the one that had put decedent's gun into his hand after his death, though Quitoriano stated that he had done this himself. In their joint statement Quitoriano at first stated that Avila did the shooting and killing, but subsequently he stated that he had done it. At first appellant had stated that she secured the gun from underneath the mattress of her bed, but in the joint statement she asserted that Quitoriano had it stuck in the front of his trousers. In his final statement Quitoriano said in substance that an argument started between him and the decedent; that he, Quitoriano, fell down and that defendant Avila got the gun and shot him and then shot Villairin. He, however, admitted hitting decedent on the head with the revolver barrel. He also stated that there were no threats from decedent of any kind, and he was quite definite that there had been no previous quarrels with decedent. There was some evidence that the bullet which wounded Quitoriano had passed first through the body of decedent. If such was the case, obviously the shot was not fired by Quitoriano.

From the conflicting stories of the two defendants and from the physical facts it appears clearly that appellant liked Quitoriano better than she did decedent; that she lived openly with Quitoriano and had never lived openly

with decedent; that there was a certain amount of jealousy between the two men and that she and Quitoriano kept themselves armed with the 38-caliber revolver with which Villairin was killed, which was kept in the mattress of their bed, fully loaded; that there had been no particular altercation that evening among the parties upon which could have been predicated any theory of an attack by the decedent; that defendants' cabin door was not locked after they returned, and if the revolver which was found in decedent's hand belonged to him at all, that he did not draw it nor was it at any time used by him during the encounter. Since both defendants admitted that this gun was placed in decedent's hand after death to make it look as though he had been the aggressor this evidence tends strongly to negative any theory as to any aggression upon Villairin's part.

The foregoing, in our opinion, discloses ample evidence upon which the jury could base a verdict against appellant Avila. It is not now urged that she acted in self-defense. Because of the prior relationship between decedent and defendant Avila any contention that she was defending herself from his advances seems unreasonable. She apparently made no effort to cry out or to run to the home of Mr. Silva next door at any time during the altercation. Also it seems more probable that the earlier statements made by her at the time of the killing are nearer the truth than those made after she had had an opportunity to think the matter over and decide what kind of a tale would furnish the best defense. All intendments are in favor of upholding the judgment of the trial court. (*People* v. *Shannon,* 28 Cal. App. (2d) 677, 680 [83 P. (2d) 302]; *People* v. *Dukes,* 90 Cal. App. 657 [266 Pac. 558].) It was for the jury to determine which of Avila's statements was to be believed, and if there is any one of them alone or in any combination of statements sufficient to sustain the verdict it cannot be said that the evidence is insufficient for that purpose. (*People* v. *Crimm,* 19 Cal. (2d) 314 [121 P. (2d) 1].)

The judgment and order denying a new trial are affirmed.

Thompson, J., and Schottky, J. pro tem., concurred.