[Crim. No. 5081. Second Dist., Div. Two. Feb. 4, 1954.]

THE PEOPLE, Respondent, v. JOSEPH WILLIAM PERRY et al., Defendants; HOWARD ARTHUR MILLER, Appellant.

Erb, French & Picone, and Samuel B. Picone for Appellant.

Edmund G. Brown, Attorney General, and Alan R. Woodard, Deputy Attorney General, for Respondent.

FOX, J.—Appellant was convicted of burglary and conspiracy to commit burglary. He appeals from the ensuing judgments and orders denying his motions for a new trial.

The indictments in this case grow out of the plans of appellant and his confederates, Davidson and Perry, to burglarize Kay's Drive-In, on Laurel Canyon Boulevard, in North Hollywood, and the subsequent unlawful entry of these premises and the asportation of the safe, containing some $8,000.

In August and September, 1952, Mr. Chenes owned five restaurants, one of which was Kay's Drive-In, where his main office was located. Late at night on Labor Day, Monday, September 1st, Mr. Chenes made up a bank deposit

consisting of the receipts of the previous four days from all his restaurants. The bills were stacked according to the various denominations. There was one stack of 22 $1.00 bills which was to be kept for purposes of making change. Mr. Chenes marked the top bill on this latter stack with the number "22." He identified this bill and figures thereon at the trial because of the particular angle of the notation upon the face of the bill. After preparing these receipts for deposit Chenes put them in the safe in his office and locked it. He closed the office and left a few minutes after midnight on the morning of September 2d. He returned about 7 a. m. and discovered his place had been entered and the safe, which weighed between 300 and 400 pounds, was gone.

The charges against defendant Perry were dismissed and he was called as a witness for the People. He had known defendant Davidson for approximately a year. During the early part of August these two men met in a restaurant near the latter's apartment and discussed their mutual need of money and "the best and easiest place to get it." Perry, who had worked for Chenes for a short time, mentioned that Kay's Drive-In "would probably be a good place to get some money" because a substantial sum, he understood, was ordinarily kept in the safe there. Davidson suggested they go out and look the situation over. About the middle of August, Perry and Davidson inspected this eating establishment and the location of the office. Davidson said "it would be a cinch if the safe wasn't too large." Neither of them saw the safe on this occasion and Perry had not previously seen it. Shortly thereafter Perry was introduced to appellant by Davidson in the latter's apartment. The three of them discussed the deal. Davidson asked appellant and Perry to go out to the drive-in and "to try and get inside and see the safe, to see how large it was and how much it would weigh." On about August 25th, Perry accompanied appellant to the drive-in in a car driven by the latter. After they had parked about a block away appellant entered the office assertedly in quest of a cook's job. He returned in about 15 minutes and said the safe would weigh between 300 and 400 pounds, that the building could be easily entered with a small crowbar, and that it was all cheap construction. The original plan had been to take the safe on the weekend prior to the Labor Day weekend but Davidson had suggested they wait until the later period because the receipts would probably be greater. In the meantime, Perry expressed his disapproval of the whole

idea and did not thereafter see either of the other men. Perry also disclosed that his girl friend, Marie, was Chenes's sister-in-law, that she worked for Chenes in his Burbank restaurant, and had been present when he discussed with Davidson the taking of the safe. She testified to such conversation, and that appellant's name was mentioned in connection with the job; also, that she told them to "lay off." She had been visited twice by Davidson and appellant at the place where she worked. When Davidson told her appellant had gone down to look at Kay's Drive-In she told him to get out and stay out. She further testified that shortly after midnight on September 2d she received a telephone call from Davidson inquiring whether Perry was there. Upon receiving a negative reply Davidson said: "Well, I guess he is out getting drunk, we will have to count him out." He also said Miller was in the car waiting for him.

With respect to appellant's visit to the office of the drive-in, ostensibly to apply for a cook's job, Mr. Chenes testified that he interviewed Miller in the office several days before the theft of the safe. Chenes told appellant there was a job open and that he should talk to the chef since he was the one who handled the kitchen jobs and hours. Appellant, however, did not report to the chef, nor did he go to the kitchen.

Davidson was arrested on September 5th. A search of his apartment revealed several crowbars in a cupboard. There was a white substance that looked like plaster on one of them. An expert's examination of the white substance on this crowbar, which Davidson said belonged to him, disclosed that the crowbar contained layers of white plaster with a cream colored paint on it which was identical in appearance, and number and size of layers, with that on the area next to the doorjamb where the culprits had broken into the drive-in.

Upon appellant's arrest he had .$8.00 in currency in his wallet consisting of a $5.00 bill and three $1.00 bills. One of these $1.00 bills had the figure "22" written on it. These were the figures Mr. Chenes identified as having been placed by him on the top bill of a stack of 22 $1.00 bills the night before the burglary. By way of explanation of his possession of this particular bill, appellant told a police officer that when he went to his apartment the night before, his landlady had told him that detectives had been looking for him; that since he had not had dinner, he went out and ate and paid for his dinner with a $10 bill, receiving the $8.00 in change. He did

not remember or had not noticed the name of the place where he ate, although it was just a short distance from his apartment. When asked if he could find the place where he had his dinner, appellant was rather undecided whether he could or not.

Appellant sought to establish an alibi. He testified that he spent Labor Day night at the home of Mr. and Mrs. James L. Blair, in Long Beach. The Blairs and Dale Fox supported his alibi. During the investigation, however, appellant did not mention the names of these people to the officers. Appellant then claimed he had been at his apartment that night.

Appellant testified that he first met Perry around the early part of August; that Perry later told him he might be able to get a job as a cook at Kay's Drive-In; that they went out to the drive-in and he inquired of a lady in the office about a job; he was advised by her that Mr. Chenes did the hiring but that he was not in; that she, however, called him on the 'phone and then advised appellant that Mr. Chenes had a job for him and that he should go out to the central store for an interview. Appellant denied having been told to see the chef about a job. When, on his return to the car Perry asked about the safe, appellant told Perry there was one in the office. Perry inquired about its size. Appellant estimated it was "about two and a half by two and a half." When Perry asked whether it could be taken out, appellant replied, "It could be removed, yes." He testified, however, that he told Perry he would not have any part in the job; he explained that he had been in trouble before in connection with a burglary, and that he was then on probation. Appellant had known Davidson for approximately three years.

Appellant contends (1) that the evidence is insufficient to support the judgment on either count; (2) that there is insufficient corroboration of Perry's testimony, who was an accomplice; and (3) that the court prejudicially erred in rejecting certain testimony offered by the defense.

■ Before a verdict, which has been approved by the trial court, can be set aside on the ground of insufficiency of the evidence it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion of guilt. ■ If the circumstances reasonably justify the verdict, the opinion of an appellate court that such circumstances might also be reasonably reconciled with the innocence of the defendants will not warrant

interference with the determination of the jury. (*People* v. *Newland,* 15 Cal.2d 678, 683 [104 P.2d 778].)

### Sufficiency of the Evidence

 Appellant's own testimony discloses that he went out to the drive-in with Perry; that he was in the office and observed the presence of the safe, noted its size, and reached the conclusion that it could be removed. It also appears from the victim's testimony that although appellant was advised a job was available he nevertheless failed to follow up the directions given by Mr. Chenes for securing the employment. From these circumstances the jury could reasonably infer that appellant did not go to the drive-in for the purpose of obtaining a position but rather for the purpose of seeing the safe and determining its size and whether it could be removed from the office. In this connection it should be recalled that Davidson had requested appellant and Perry to ascertain the size of the safe, and that Davidson had told Marie that appellant had been out to look at Kay's Drive-In. Davidson, who had gone out with Perry, had looked the situation over from the outside and had concluded that it would be a "cinch" to enter the building with a small crowbar. The discovery of such an instrument in Davidson's apartment with stucco thereon, covered with paint which corresponded with that on the building at the place where it had been broken into, definitely identifies him with the burglary. From these facts the jury could reasonably draw the inference that the defendants were working together in planning the crime; that there was concert of action between them to commit this offense, and that appellant was a part of that conspiracy. The evidence clearly justifies the verdict on the conspiracy count.

 The foregoing, plus the fact that appellant, when arrested, had in his possession the $1.00 bill on which the victim had placed the figures "22," justifies an inference that appellant participated in the burglary. The jury was obviously not impressed with appellant's story of the manner in which he came into possession of this particular bill, namely, that he had received it as change in a neighborhood restaurant where he claimed to have had dinner the night before, which establishment, however, he was unable to remember or identify. Likewise, the jury was not required to believe the alibi testimony. (*People* v. *Klinkenberg,* 90 Cal.App.2d 608, 626 [204 P.2d 47, 613]; *People* v. *Mitchell,* 91 Cal.App.2d 214, 219 [205 P.2d 101].) It cannot therefore be said that

the evidence is insufficient as a matter of law to sustain appellant's conviction of the charge of burglary.

### Corroboration of Accomplice

Because Perry was an accomplice his testimony had to be corroborated. (Pen. Code, § 1111.) ■ "The corroborative evidence may be slight and entitled to little consideration when standing alone." (*People* v. *Wayne,* 41 Cal.2d 814, 822 [264 P.2d 547].) ■ Such evidence must raise more than a conjecture or suspicion of guilt, but it is sufficient if it connects the defendant with the commission of the crime in such a way as to reasonably satisfy the fact-finding body that the accomplice is telling the truth. (*People* v. *Henderson,* 34 Cal.2d 340, 342-343 [209 P.2d 785].) ■ The weight of corroborative evidence is a question for the jury's determination. ■ Therefore, unless we can say that the corroborating evidence is either incompetent or is of such a character that it could not tend to connect appellant with the commission of the crime and could not reasonably support an inference of such connection, the finding of the jury on that issue cannot be disturbed on appeal. (*People* v. *McNamara,* 103 Cal.App.2d 729, 738 [230 P.2d 411].)

■ Applying these principles, it is clear that Perry's testimony is amply corroborated. Appellant's testimony corroborates Perry's statement that they went out to the drive-in together; it also discloses that appellant took notice of the safe, estimated its size, and that it could be removed. The victim's testimony that although he advised appellant there was a job open as a cook and to see the chef about it, yet appellant neither saw the chef nor went to the kitchen, furnishes further corroboration of Perry's story. The testimony of Marie, that Davidson told her appellant had been out to look at Kay's Drive-In, justifies the inference that he did not go there for the purpose of seeking employment. These circumstances and the inferences to be drawn therefrom connect appellant with the conspiracy to commit the burglary and therefore furnish ample corroboration. The possession by appellant of the marked $1.00 bill definitely connects him with the actual commission of the burglary.

■ Appellant contends that the court erred in rejecting testimony by Mrs. Miller, appellant's mother, that she had collected a number of bills with various numbers marked on them. This testimony was immaterial. The problem was not merely that a bill was found in the possession of appellant

on which the figures "22" had been written but rather the fact that the victim was able to identify these figures as having been written by him on this bill.

The judgments and the orders denying motions for new trial are affirmed.

Moore, P. J., and McComb, J., concurred.