[Crim. No. 6332. Second Dist., Div. Two. Aug. 27, 1959.]

THE PEOPLE, Respondent, v. JOSEPH DONALD MURPHY et al., Defendants; DANIEL CALVIN HALL et al., Appellants.

Al Matthews, Gladys Towles Root and Eugene V. McPherson for Appellants.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Marvin L. Part, Deputy Attorney General, for Respondent.

ASHBURN, J.—Appellants John Russell Engstrom and Daniel Calvin Hall were charged with four counts of burglary and one count of attempted burglary. Both were found guilty of Counts III and IV, while Hall was also found guilty of Count V, attempted burglary. Engstrom was also charged with three prior felony convictions which the court found to be true as alleged.

Defendants appeal from the judgments and sentences. ■ Since no appeal lies from the sentences, the purported appeals therefrom will be dismissed. (*People* v. *Millum*, 42 Cal.2d 524, 525 [267 P.2d 1039].) ■ Defendant Hall also appeals from the finding that he was armed with a deadly weapon, and defendant Engstrom from the finding that the priors alleged are true. Although designated by appellants as "findings," these matters constitute a part of the judgments and are reviewable upon the appeals from the judgments. ■ Neither appellant, however, makes any mention thereof in his appeal brief; there is no specification of error, and no authority or argument presented in these respects. This court, therefore, will disregard such matters in this opinion. (See *People* v. *Vivian*, 50 Cal.App.2d 533, 537 [123 P.2d 613] ; *People* v. *Purcell*, 22 Cal.App.2d 126, 129 [70 P.2d 706] ; *People* v. *Resum*, 120 Cal.App.2d 618, 619 [261 P.2d 765].)

By stipulation the matter was submitted to the trial court solely upon the transcript of the preliminary hearing and the exhibits received in evidence at that time. Defendants did not testify.

The facts concerning Counts III and IV are interwoven: On October 22, 1957, at approximately 12:45 a.m., Jeanne Van Pelt was called to her front door by the bell. She testified that when she opened the door a man with a gun pushed his hand inside and broke the chain latch ; this was appellant Engstrom. He and appellant Hall then entered and she was ordered into a bedroom and told to get in bed with her daughters. She was placed in fear by the gun. Engstrom remained with her. Hall went into her husband's bedroom and through the wall Mrs. Van Pelt heard Hall tell her husband to get out of bed. Then Engstrom also went into the husband's bedroom and she heard Engstrom or Hall ask concerning the

keys and combination to the safe of a Thriftimart Market which her husband managed. Then a third man with a handkerchief mask entered the house and he also questioned her husband concerning the market. Engstrom then left the house. Mrs. Van Pelt was allowed to go into the other bedroom where she found her husband and young son lying on the floor with their wrists taped behind their backs. Hall and the masked man were there and both had guns.

In approximately 15 or 20 minutes Engstrom returned and said he could not find the safe in the market and asked for further information. Mr. Van Pelt gave Engstrom detailed instructions on how to find the safe and Engstrom left again. The market was about four blocks away. About half an hour later a car was heard. The masked man checked to see if it was Engstrom, then he and Hall left. Mrs. Van Pelt found that their two telephones had been dismantled. Approximately two weeks later Mrs. Van Pelt positively identified Hall and Engstrom, picking each out of a police line up.

Mr. Van Pelt testified that he was the manager of the Thriftimart Market at Barrington Avenue and National Boulevard in Los Angeles. That it was through fear and without his consent that he gave the keys to the market and combination to the safe to the men. He did not see the faces of the men, but later identified Hall by his rasping voice. Van Pelt went to the market shortly thereafter that morning and observed that the lock on the office door had been opened and about $3,500 had been taken from the vault.

Joseph Murphy testified for the prosecution that he was the man with the handkerchief over his face who was at the Van Pelt home; that Hall and Engstrom were also there; that the keys to the market and combination to the safe were given to Engstrom; that Engstrom left but came back saying he couldn't open the safe; that Van Pelt talked with him about it and Engstrom left again; when he came back all three went to Murphy's apartment where the three men split the money, about three thousand dollars.

APPEAL OF ENGSTROM. This appellant contends that (1) there was not sufficient corroboration of the testimony of the accomplice (Murphy) as required by Penal Code, section 1111,[1] and (2) there was no evidence, direct or indirect, that

---

[1]Pen. Code, § 1111: "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the

appellant committed the crime of burglary. It is contended that if we eliminate the testimony of Murphy, there is no evidence as to who took the money; no evidence that Engstrom entered the market, that he took the money, or that he subsequently had possession of the money. The argument is directed to Count IV, the burglary of Thriftimart, for appellant concedes that the testimony of Murphy was corroborated as to what transpired at the Van Pelt house (Count III).

It may first be stated that it is not necessary that the stolen property be found in the possession of the defendant; in fact, it is unnecessary to prove a theft under an accusation of burglary. The statute requires evidence only that the entry be effected with the intent to steal or to commit any felony. (Pen Code, § 459; *People* v. *Rhodes*, 137 Cal.App. 385, 391 [30 P.2d 1026]; *People* v. *Taylor*, 4 Cal.App.2d 214, 218 [40 P.2d 870].)

Nor is it necessary ''in order to establish the defendant's guilt, that any of the witnesses should have actually seen him break and enter the premises, or should have seen him in the vicinity of the premises about the time the burglary was committed. It rarely happens that an offense, like that here complained of, can be proved by witnesses who saw and recognized the defendant in the act, and resort must, therefore, ordinarily be had to circumstantial evidence.'' (*People* v. *Flynn*, 73 Cal. 511, 513 [15 P. 102].)

''In a prosecution for burglary the evidence on which a defendant is convicted may be purely circumstantial and if substantial, as in the present case, is sufficient to support the judgment of guilty.'' (*People* v. *Colletta*, 100 Cal.App.2d 1, 5 [222 P.2d 922].) See also *People* v. *Anderson*, 37 Cal.App. 2d 615, 619 [100 P.2d 348]; *People* v. *Stewart*, 113 Cal.App 2d 687, 690 [248 P.2d 768].)

The test regarding corroboration required by section 1111 is stated in *People* v. *MacEwing*, 45 Cal.2d 218, 224 [288 P.2d 257] : ''The most recent decisions have in substance phrased the rule as follows: The corroborating evidence is sufficient if it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the witness who must be corroborated is telling the truth. [Citations.]''

commission of the offense or the circumstances thereof. An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given.''

*People* v. *Henderson*, 34 Cal.2d 340, 342-343 [209 P.2d 785] : "Although the corroborating evidence must raise more than a conjecture or suspicion of guilt, it is sufficient if it connect the defendant with the commission of the crime in such a way as reasonably to satisfy the fact finding body that the accomplice is telling the truth. [Citation.] The evidence of inculpatory participation need not be direct nor extend to every fact and detail. It may be circumstantial and is sufficient even though slight, if it tend to connect the defendant with the commission of the crime. [Citations.]" The weight of corroborative evidence is a question of fact for the trier of fact to determine. "Therefore, unless we can say that the corroborating evidence is either incompetent or is of such a character that it could not tend to connect appellant with the commission of the crime and could not reasonably support an inference of such connection, the finding of the jury on that issue cannot be disturbed on appeal. (*People* v. *McNamara*, 103 Cal.App.2d 729, 738 [230 P.2d 411].)" (*People* v. *Perry*, 123 Cal.App.2d 74, 80. [266 P.2d 515].)

 In the instant case the independent evidence—the competent and uncontradicted testimony of Mr. and Mrs. Van Pelt—clearly tends to connect appellant with the commission of both burglaries of which he has been convicted, and to enable the trial court to accept as true the testimony of the accomplice, Joseph Murphy. Under the principles above stated, the corroboration requirements of section 1111 have been fully met.

The cases relied upon by appellant are clearly distinguishable. In *People* v. *Sawaya*, 46 Cal.App.2d 466 [115 P.2d 1001], the prosecution relied primarily and solely upon the testimony of two accomplices, and the evidence offered in corroboration consisted of testimony as to a conversation and association prior to the date of the crime. In *People* v. *Linde*, 131 Cal.App. 12 [20 P.2d 704], the purported corroborating evidence was testimony that defendant had been in the company of the accomplice two hours prior to the time of the crime, that he had previously stated that tires might be obtained at the place which was burglarized, and that a day or two after the burglary he inquired for the address of the accomplice from the latter's brother. In neither case did the corroboration testimony of itself tend to connect defendant with the commission of the offense charged.

HALL'S APPEAL. As to Counts III and IV, this appellant makes the contention that the identification of appellant was

not satisfactorily demonstrated. Suffice to say that·''The question of identification of the perpetrator of a crime is one for determination by the trier of fact and unless the evidence of identity is so weak as to constitute no evidence at all this court cannot set aside the decision of the trial court. [Citations.] In order to sustain a conviction it is not necessary that the identification be positive or free from inconsistencies. [Citations.]'' (*People* v. *Kittrelle,* 102 Cal.App.2d 149, 154 [227 P.2d 38].) See also *People* v. *Barnett,* 159 Cal.App.2d 22, 29 [323 P.2d 96]; *People* v. *Diaz,* 160 Cal.App.2d 123, 133 [324 P.2d 887]. ''In a case such as the present one, where there is a positive direct testimony that the defendant was one of the perpetrators of the crime, it is incumbent upon him to show that the testimony is inherently unbelievable in order to prevail.'' (*People* v. *Braun,* 14 Cal.2d 1, 5 [92 P.2d 402].) No such showing is made in the instant case.

Count V charged that the appellants attempted to enter the Triangle Market at 12741 Washington Boulevard with the intent to commit theft therein. Appellant Engstrom was found not guilty. Hall was found guilty as charged and appeals.

The evidence is that at about 1:30 a.m. on the morning of November 7, 1957, two police officers in a patrol car saw an automobile parked at the curb on Washington Boulevard. Its lights were off; the officers had not seen the car before to their knowledge. Appellant Hall was in the driver's seat leaning over the wheel. The officers walked to the car and Hall got out. Officer Sarlo asked appellant if he had an operator's license. Hall said he did, and explained that ''[t]he reason why I am here, I have an operation. I feel kind of weak and I was leaning over the wheel and I don't feel very good.'' Officer Sarlo said ''well, we'll just check you out and turn you loose if everything checks out all right.'' While Hall was showing his driver's license to the second officer, Sarlo proceeded to check the registration of the vehicle. In so doing he saw an automatic pistol on the floor of the car on the driver's side. Officer Sarlo testified that he then ''asked Mr. Hall to see his arms and he showed me his arms and I pulled his arms behind his back and I told my partner to put the cuffs on him.'' Hall was arrested at that time. A further search of the car revealed another gun (both were fully loaded) a flashlight, gloves, a box which appeared to be a container for an auger bit, and some clothing. Upon searching the clothing the officer found a wallet belonging to Joseph Donald Murphy which

contained the name, address, and telephone number of the owner of the Triangle Market. The car was parked about a block from said market. A later check of the market showed that a large hole had been made in the roof and the back door had been battered down. The owner of the market testified that several hours before closing time, when he was last in the market, everything was in order.

Joseph Murphy again testified for the prosecution to the effect that he, Hall and Engstrom had gone to the vicinity of the Triangle Market together; that Murphy and Engstrom were in the latter's car, and Hall was in Murphy's car. That while Hall stayed in the car, the other two made a hole in the roof of the building, intending to take something from inside. Because they saw what appeared to be burglar alarm wires after the hole was made, they left the building to return to Hall, but seeing the police near the car, they went home by themselves.

Appellant's first contention is that his arrest and the search of the car were unlawful and that the court, over objection, received in evidence the guns and various other items found in the car occupied by him.

There is no direct evidence that the officers did not have a warrant for the arrest, and in the absence of evidence to the contrary it ordinarily would be presumed that the officers acted legally. (See *Badillo* v. *Superior Court*, 46 Cal.2d 269, 272 [294 P.2d 23].) However, Officer Sarlo testified that he said to appellant, "well, we'll just check you out and turn you loose if everything checks out all right." In view of this statement, we cannot assume that there was a warrant, and the People do not contend for such a presumption.

Penal Code, section 836, as amended in 1957, prior to the arrest herein, provides that a peace officer may make an arrest without a warrant, "1. Whenever he has reasonable cause to believe that the person to be arrested has committed a public offense in his presence. 2. When a person arrested has committed a felony, although not in his presence. 3. Whenever he has reasonable cause to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed."

"Probable cause for an arrest is shown if a man of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused. [Citations.] Probable cause may exist even though there may be some room for doubt. [Citations.]

The court and not the officer must make the determination whether the officer's belief is based upon reasonable cause. [Citations.] The test in such case is not whether the evidence upon which the officer made the arrest is sufficient to convict but only whether the prisoner should stand trial." (*People* v. *Fischer*, 49 Cal.2d 442, 446 [317 P.2d 967].) "In determining what constitutes reasonableness each case must be reviewed in the light of its own facts (*Go-Bart Importing Co.* v. *United States*, 282 U.S. 344, 357 [51 S.Ct. 153, 75 L.Ed. 374])." (*People* v. *Ambrose*, 155 Cal.App.2d 513, 521 [318 P.2d 181].) The court looks only at the facts and circumstances presented to the officer at the time he was required to act. (*People* v. *Cantley*, 163 Cal.App.2d 762, 765 [329 P.2d 993].)

A police officer has a right to make inquiry in a proper manner of persons upon the public streets at night (*Gisske* v. *Sanders*, 9 Cal.App. 13, 16 [98 P. 43]; *People* v. *Jiminez*, 143 Cal.App.2d 671, 673 [300 P.2d 68]; *People* v. *Simon*, 45 Cal.2d 645, 650 [290 P.2d 531]); and, although this right does not of itself justify intensive search of their persons or automobiles (see *People* v. *Simon, supra*, p. 650; *People* v. *Gale*, 46 Cal.2d 253, 257 [294 P.2d 13]), the inquiry may reveal reasonable or probable cause for arrest, and such is the case here.

In the course of checking the registration of the automobile the officer, from outside the car, saw the automatic pistol on the floor. This warranted investigation and the officer properly took possession of this gun. There was no search so far as this gun was concerned, for to see that which is in plain sight is not a search. (*People* v. *West*, 144 Cal.App.2d 214, 220 [300 P.2d 729]; *People* v. *Ambrose, supra*, 155 Cal. App.2d 513, 522; *People* v. *Barnett, supra*, 159 Cal.App.2d 22, 30; *People* v. *Spicer*, 163 Cal.App.2d 678, 683 [329 P.2d 917].) Upon finding a loaded pistol in the car, it was reasonable for the officers to conduct a further investigation. As stated in *People* v. *West, supra*, 144 Cal.App.2d 214, 220-221: "Police officers are guardians of the peace and security of the community and are concerned with criminals in a complex society— '. . . and the efficiency of our whole system, designed for the purpose of maintaining law and order, depends upon the extent to which such officers perform their duties and are faithful to the trust reposed in them. Among the duties of police officers are those of preventing the commission of crime, of assisting in its detection, and of disclosing all information known to them which may lead to the apprehen-

sion and punishment of those who have transgressed our laws. . . . It is for the performance of these duties that police officers are commissioned and paid by the community. . . .' *(Christal* v. *Police Com.,* 33 Cal.App.2d 564, 567 [92 P.2d 416].)'' ▮ This court pointed out in *People* v. *Sanson,* 156 Cal.App.2d 250, 254 [319 P.2d 422], that ''the reasonableness of a search is not to be justified by what the search turns up 'but by appearances to the searcher at the time of his action.' So long as the officer reasonably evaluates these appearances and acts accordingly the rights of the accused are adequately safeguarded.''

This case was submitted to the trial court solely upon the transcript of the preliminary hearing, with no reservations. The transcript reveals that at the conclusion of the hearing defense counsel made the objection that ''. . . as to the exhibits, the flashlight, the gloves, the box holding a bit and all the other items found in the vehicle, counsel objects to their entry as an illegal search and seizure. They had no cause to have the search nor examine the vehicle if nothing was transpiring at that time.'' However, at the time Officer Sarlo testified as to the articles which he found in the automobile defendant made no objection to any of the officer's testimony and there was no motion to strike. The court was entitled to consider these statements in its determination as to whether the officers had reasonable or probable cause to make an arrest and search. (See *People* v. *Sanson, supra,* 156 Cal.App.2d 250, 254-255; *People* v. *Williams,* 148 Cal.App.2d 525, 532 [307 P.2d 48].)

Appellant urges that, upon discovery of the pistol on the floor of the automobile, the officers were not justified in arresting him upon a ''concealed weapon'' charge since the weapon was not concealed. The record does not disclose upon what charge appellant was initially arrested and held. ▮ But, as stated in *People* v. *Brown,* 45 Cal.2d 640, 643 [290 P.2d 528] : ''It should be noted at the outset that the legality of an arrest is not necessarily determinative of the lawfulness of a search incident thereto. Just as some searches may be reasonable and hence lawful in the absence of a warrant or an arrest [citation], others may be unreasonable and hence unlawful although incident to a lawful arrest. [Citations.]'' *People* v. *Wright,* 153 Cal.App.2d 35, 39-40 [313 P.2d 868] : ''Appellant's argument seems to assume that search, and seizure of the articles found, is justified only when there is a lawful arrest. This is not the rule. It is true that the great

bulk of the cases involve an effort to justify the search by showing a lawful arrest. But it does not follow that a search or seizure may be made only in connection with such an arrest. In *People* v. *Roberts*, 47 Cal.2d 374 [303 P.2d 721], a search was held justified although not made as an incident to an arrest.'' ■ And in *People* v. *Ball*, 162 Cal.App.2d 465 [328 P.2d 276], it is stated that ''[a] search or seizure may be justified even though it is in no way related to an arrest. [Citations.] ■ We know of no rule by which a valid search, justifiable without reference to an arrest, is voided by the unlawfulness of an arrest upon which the search does not depend.'' (P. 467.)

■ In the light of the foregoing rules we are of the opinion that the trial court properly concluded that the search was reasonable and properly admitted into evidence the articles found in the automobile.

Appellant then contends that the evidence is insufficient to uphold the judgment for two reasons:

■ First, he attacks the credibility of accomplice Murphy's testimony because of his statement that he had been convicted of a felony, and particularly because the district attorney's office had stated to him that if he cooperated they would do all in their power to help him. There is some confusion in the record as to whether Murphy told the entire story to the police, thus implicating Hall and Engstrom, before or after the district attorney's statement; however, on redirect examination he said it was before. In any event, the statement of the district attorney did not amount to a promise of immunity conditioned upon Murphy testifying in a certain way (see *People* v. *Green*, 102 Cal.App.2d 831, 838-839 [228 P.2d 867]). Under the circumstances presented, it was simply a question of credibility and weight to be given to Murphy's testimony which was for the determination of the trial court. (*People* v. *Lyons*, 50 Cal.2d 245, 265 [234 P.2d 556].)

■ Secondly, appellant contends that Murphy's testimony was not sufficiently corroborated.

''The corroborating evidence is sufficient if it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the witness who must be corroborated is telling the truth.'' (*People* v. *MacEwing, supra,* 45 Cal.2d 218, 224.) ■ *People* v. *Wayne*, 41 Cal.2d 814, 822 [264 P.2d 547] : ''The corrobora-

tive evidence may be slight and entitled to little consideration when standing alone.''

 The testimony of the police officer places appellant in an automobile at 1:30 a. m. parked on the street about a block from the Triangle Market; he was sitting in the driver's seat leaning over the wheel. After appellant got out of the car, the officer saw an automatic pistol on the floor of the automobile on the driver's side; it was loaded. A second loaded pistol was found, as well as the other items mentioned above. Of particular importance was his testimony concerning the wallet of Murphy, the codefendant, containing the name, address and telephone number of the owner of the Triangle Market. All of this occurred about a half hour before police investigated and discovered the hole in the roof of the Triangle Market. This was sufficient corroboration of Murphy's testimony.

The purported appeals from the sentences and the ''findings'' are dismissed. The judgments are affirmed.

Fox, P. J., and Herndon, J., concurred.