Filed 7/11/13  In re Brendan B. CA1/4
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re BRENDAN B., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>BRENDAN B.,<br><br>     Defendant and Appellant. | A135980<br><br>(Mendocino County<br>Super. Ct. No. SCUKJDSQ 10-16152) |

Appellant Brendan B. was first declared a ward of the juvenile court pursuant to Welfare and Institutions Code section 602 in April 2011 and was placed on probation with various conditions, including that he not possess or consume marijuana.  Since that time, appellant has violated the terms and conditions of his probation on numerous occasions.  The instant appeal stems from the seventh subsequent juvenile petition filed in April 2012, alleging that then 16-year-old appellant violated conditions of his probation (count one), committed burglary (Pen. Code, § 459/460, subd. (b) [count two]), possessed stolen property (Pen. Code, § 496, subd. (a) [count three]), and resisted a probation officer in the course of his duties (Pen. Code, § 148, subd. (a)(1) [count four]).  Appellant admitted to resisting arrest (count four).  On May 14, 2012, following a contested jurisdictional hearing, the juvenile court found the remaining three counts true.

1

On appeal, appellant contends there was insufficient evidence to support the finding that he committed burglary.  We affirm.

# I. FACTS

## A.    *Petitioner's Case*

### 1.    The Burglary

About 3:00 a.m. on March 26, 2012,[1] Mary Valley, the manager of Moon Lady, a clothing boutique located at 100 South Main Street in Willits, was summoned to the store.  When she arrived, "the police were there and glass [was] everywhere."  A display window had been broken, and the broken glass landed "[o]n all the shelves, in the clothes, on the floor."  Missing items from the store included an expensive hemp jacket, pants, jeans, hats, t-shirts, and Metal Mulisha[2] dirt bike clothing.  Valley testified that the hemp jacket cost $300 and "[a]ll the kids in town want [one]."  Willits Police Officer Jeffrey Andrade responded to the scene; it was obvious that a burglary had taken place, the suspect, however was unknown.

### 2.    The Investigation

On April 3, Officer Andrade, along with Sergeant Anderson, responded to a residence on Redwood Avenue to investigate a report that one of the residents, appellant's sister, had stolen a computer.  Because the sister was on probation, Officer Andrade searched her bedroom and the common areas of the house.  Upon learning that appellant was also on probation, the officers searched his bedroom as well. On the dresser in appellant's bedroom Sergeant Anderson found a black computer bag containing a jacket.  The jacket matched a photograph in a catalogue of the stolen clothing given to Officer Andrade by the owner of Moon Lady.  Metal Mulisha shirts with attached price tags were also in the bag.  Two or three other shirts that had been worn did not have any tags.  Two hats were found on the floor.  The hats did not have any tags, but one had a cardboard strip on the inside, which is something typically

---

[1]    All of the relevant events occurred in 2012.

[2]    Metal Mulisha clothing features skulls on "[e]verything."

2

found in new hats.  On the bed, Officer Andrade found a crowbar that had been wrapped in other clothing unrelated to the burglary.  The jeans stolen from Moon Lady were not found in appellant's room.

When Officer Andrade returned the clothing to Moon Lady, the manager and the owner both identified the jacket.  At that time, Officer Andrade noticed a piece of glass on the jacket.  The store manager said that the jacket had been worn, explaining that it "didn't smell fresh and clean" but "smelled like cigarettes."  She also testified that all of the returned clothes had glass slivers on them.

### 3.    Appellant's Arrest

Mendocino County Deputy Probation Officer Shaun Vipond, appellant's probation officer in the spring of 2012, testified that appellant failed to check in with the officer on the last Tuesday of March.  When Officer Vipond learned that appellant's home had been searched and he was wanted in connection with a burglary, the probation officer arranged for a pick-up order for his arrest.  Officer Vipond visited appellant's house twice in early April, but each time appellant was not there.   Officer Vipond spoke to appellant's mother on four occasions, each time she reported that she did not know where appellant was.

Officer Vipond spotted appellant on April 23 and a foot chase ensued.  As appellant tried to flee, he dropped the backpack he was carrying.  Eventually Officer Vipond was able to apprehend appellant.  Initially, appellant denied that the backpack belonged to him.  Officer Vipond, however, saw appellant wearing the backpack and he picked it up and searched its contents.  The backpack contained clothing, a glass cutter, a hood with a mesh face mask capable of concealing the wearer's face, a bag of marijuana, a marijuana smoking pipe, two cigarette lighters, and one EBT card belonging to appellant's sister.

Appellant told Officer Vipond that he had found the marijuana "under a bridge." The glass cutter, appellant said, belonged to his twin brother T.B.  And, appellant said the clothing belonged to his father.

3

## B.    *Defense*

Appellant testified that he was at home all evening on March 26. He stated that he and his brother T.B. had discovered the clothing in a trash bag in an alley in Willits and they took it home. According to appellant, T.B. hid the bag and its contents in his (T.B.'s) closet. Appellant denied that the clothing was in his room when he left for school on April 3, the day police searched his room. Appellant explained that the crowbar was his father's, which he said he "just threw" on the floor. The backpack he had when he was arrested belonged to one of T.B.'s friends. Appellant had no recollection of the glass cutter being in the backpack when he received it. Appellant explained that he used the hood and mask to scare his friends. Appellant further explained that he decided to pack his father's clothes in the backpack so that he could disguise himself and avoid apprehension by his parole officer. Appellant also cut his hair.

Although he denied stealing the clothing, appellant said he decided to flee rather than to talk to police because he "was dirty for smoking marijuana." Appellant stated that he did not know how the stolen clothing got into his room, although he claimed that his brother frequently entered his room. Appellant denied that he wanted to wear the stolen clothing, explaining that he did not wear Metal Mulisha because it is "kind of white supremacist" featuring a "Gestapo helmet" on the skulls. Originally, appellant and his brother thought about selling the clothing, but then appellant decided that his brother could have it all.

Appellant admitted to trying on the hemp jacket, but denied wearing the jacket. Appellant said the jacket was too small for him. Appellant denied that he was photographed wearing the jacket. He further denied knowing a girl named T.H. However, when confronted with the fact that he was friends with T.H. on Facebook, appellant admitted that he knew the girl. Appellant further admitted that the girl took a picture of him wearing the jacket while he was asleep on the school bus. Appellant said he put on the jacket because he was cold. The girl posted this picture of appellant

4

on Facebook because he was "drooling or something and she thought it would be funny."

Appellant's parents testified that appellant was home on the evening of March 26 and the morning of March 27. The hood found in appellant's bag was part of a Halloween costume belonging to one of the parents. Appellant's father owned a glass cutter that he kept in the garage.

Appellant's father testified that it would be difficult to crawl through the windows in appellant's room because of the configuration of the furniture and the presence of shrubbery outside the room. Every night prior to going to bed, appellant's father locked the three doors to the house and checked on appellant. Neither appellant nor his brother had keys to the house. Both parents were light sleepers and would usually hear any noises in the house. Also, the family's dogs would bark if there was any type of disturbance.

Appellant's parents never saw the clothing stolen from Moon Lady in the house. According to appellant's father, neither appellant nor his brother would wear Metal Mulisha clothing, explaining that his sons were pretty particular about what they wore and the stolen clothing was too "ostentatious for their taste."

## II. DISCUSSION

Appellant contends there was insufficient evidence to support the juvenile court's true finding that he committed burglary because there was no evidence that he entered the Moon Lady store.

An appellant assumes a "heavy burden" when he challenges the sufficiency of the evidence to support the findings. (*In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1136.) In addressing such a challenge, we "consider the evidence in a light most favorable to the judgment and presume the existence of every fact the trier could reasonably deduce from the evidence in support of the judgment. The test is whether substantial evidence supports the decision, not whether the evidence proves guilt beyond a reasonable doubt." (*People v. Mincey* (1992) 2 Cal.4th 408, 432, fn. omitted; *People v. Hayes* (1990) 52 Cal.3d 577, 631; *People v. Johnson* (1980) 26 Cal.3d 557, 576.) Our sole function is to

determine if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319; *People v. Moon* (2005) 37 Cal.4th 1, 22; *People v. Bolin* (1998) 18 Cal.4th 297, 331; *Taylor v. Stainer* (1994) 31 F.3d 907, 908-909.) The standard of review is the same in cases where the prosecution relies primarily on circumstantial evidence. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11; *People v. Stanley* (1995) 10 Cal.4th 764, 792; *People v. Bloom* (1989) 48 Cal.3d 1194, 1208; *People v. Bean* (1988) 46 Cal.3d 919, 932.) The California Supreme Court has held, "Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin, supra,* 18 Cal.4th at p. 331, quoting *People v. Redmond* (1969) 71 Cal.2d 745, 755; see also *People v. Hughes* (2002) 27 Cal.4th 287, 370.) The Court of Appeal has held: "The trier of fact, not the appellate court, must be convinced of the minor's guilt, and if the circumstances and reasonable inferences justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant reversal of the judgment. [Citation.]" (*In re James B.* (2003) 109 Cal.App.4th 862, 872; see also *People v. Bean, supra,* 46 Cal.3d at pp. 932-933.)

Penal Code section 459 provides, "Every person who enters any . . . shop, warehouse, store, . . . or other building . . . with intent to commit grand or petit larceny or any felony is guilty of burglary." "Possession of recently stolen property is so incriminating that to warrant conviction there need only be, in addition to possession, *slight* corroboration in the form of statements or conduct of the defendant tending to show his guilt." (*People v. McFarland* (1962) 58 Cal.2d 748, 754, italics added.) Circumstances that have been held sufficient corroborative evidence when coupled with possession include (a) flight; (b) false statements showing consciousness of guilt; (c) false statements as to how the property came into defendant's possession; (d) assuming a false name and an inability to find the person from whom defendant claimed to have received the property; (e) sale of the property under a false name and at an inadequate price; (f) sale of the property with marks of identity removed and failure to account for its

possession; (g) giving false testimony; and (h) an effort to throw away the stolen property.  (*People v. Russell* (1932) 120 Cal.App. 622, 625, see also *People v. Gregor* (1956) 141 Cal.App.2d 711, 716-717 [burglary tools; renting apartment under false name].)

Here, there was sufficient corroborating evidence.  In addition to conscious possession, we have an explanation the court could reasonably deem false—appellant and his brother "found" the clothing in an alley, appellant decided he did not want anything to do with the clothing, so appellant's brother stored the clothing in his (appellant's brother's) room, yet on the day of the search the clothing inexplicably was found in appellant's room.  Although appellant initially denied wearing the clothing, there was a photograph of appellant wearing the hemp jacket.

There is also evidence of flight.  After learning that the police searched his room, appellant went into hiding for about 20 days, taking efforts to disguise his appearance to avoid apprehension.  Also, once spotted by his probation officer, appellant gave chase and attempted to discard the backpack.

The trial court was not required to believe appellant's explanation that he was on the run for most of April because he had violated the conditions of his probation by smoking marijuana.  (See Evid. Code, § 312, subd. (b); *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)  Nor was the court required to believe appellant's evasive explanation for his possession of the crow bar and the glass cutter, either or both of these items could have provided the means to enter the store through the glass window.  (See *People v. Gregor, supra,* 141 Cal.App.2d at p. 716.)

In sum, we conclude: " 'In a prosecution for burglary the evidence on which a defendant is convicted may be purely circumstantial and if substantial, as is in the present case, is sufficient to support judgment of guilty.'  [Citations.]" (*People v. Murphy* (1959) 173 Cal.App.2d 367, 373.)

## III. DISPOSITION

The judgment is affirmed.

_____
REARDON, J.

We concur:

_____
RUVOLO, P.J.

_____
HUMES, J.

8