[Crim. No. 4502.   Second Dist., Div. Two.   Feb. 5, 1951.]

THE PEOPLE, Respondent, v. PAUL W. KITTRELLE, Appellant.

Sam Houston Allen for Appellant.

Fred N. Howser, Attorney General, and Howard S. Goldin, Deputy Attorney General, for Respondent.

WILSON, J.—Defendant was charged by informations with two crimes of burglary. In count one of the first information he was accused of having entered the house of one Roy Moye with the intent to commit theft and in count two thereof he was charged with having entered the same house on the same date with the intent to commit rape. In the second information defendant was accused of having entered the house of one Enola Ravenscroft with the intent to commit theft. He pleaded not guilty in each action and the two causes were consolidated for trial, which was before the court without a jury. At the trial counts one and two of the Moye case were consolidated into count I of the information and de-

fendant was charged with "burglary with intent to commit theft and rape." He was found guilty in the Moye case of the charge in count I and guilty as charged in the Ravenscroft information. He is appealing from each of the judgments of conviction.

## THE MOYE CASE

On September 17, 1949, shortly before 5 o'clock in the morning, Mrs. Moye was awakened by a movement of the bed covers at the foot of her bed as if someone were pulling at them. She opened her eyes and saw a man leaning over the foot of her bed. Although inside the room it was semidark, it was light outside. As she looked at him the man raised up and turned facing her and as he straightened up he drew his coat together. He began to walk toward the doorway leading into the hall. At that moment she screamed that there was a man in the house and he started to run. He escaped hurriedly into the hall, slamming the door after him.

Mr. Moye, who was asleep in the twin bed next to his wife, was awakened by her scream. He jumped out of bed and about 10 feet away he saw the door between the bedroom and the hall close slowly at first and then slam. Mr. and Mrs. Moye both pursued the man through the house and outside. Mr. Moye was about 25 feet behind him going down the back stairs and saw him go around the side of the house toward the front. They saw him get into a 1947 or 1948 green Studebaker car, which was parked at the curb in front of their house, and drive off. When Mr. Moye reached the street the car was about 75 feet from him and he kept it under observation for about 500 feet. He returned to the house and notified the police. Mrs. Moye examined the premises but found nothing disturbed.

Defendant was stopped by the police at 5 or 5:15 a. m. of that day, about 5 miles from the Moye residence, at which time he was driving a 1947 or 1948 blue-green Studebaker sedan. At that time the police knew none of the details of the burglary and they released defendant when they found nothing in his car indicating a burglary. He was subsequently apprehended at his residence.

Later in the same day, in the police show-up, Mrs. Moye identified defendant as the person who had been in her bedroom. Mr. Moye could not definitely identify the face of defendant but noticed that he was of the same build, same type and same general structure.

The following week Mr. and Mrs. Moye, having read defendant's address in a newspaper, drove by his home where they saw in the garage the front end of a green Studebaker sedan which corresponded in type of body, color, make and year with that driven away from their home by the intruder on the morning of September 17.

Defendant contends the evidence is insufficient to support a conviction; that where circumstantial evidence is relied upon the facts must not only be consistent with the theory of guilt but must be inconsistent with any other rational conclusion. The cases cited by defendant are not applicable, the quoted portion in each dealing with the necessity of properly instructing the jury with respect to circumstantial evidence. The instant case was tried by the court sitting without a jury. The trier of fact is the sole judge of the weight and worth of the evidence. The function of this court is to correct errors of law and, where a jury has been waived, before the judgment may be set aside on appeal it must clearly appear that upon no hypothesis is there sufficient evidence, circumstantial or otherwise, to support the conclusion reached by the trial court. (*People* v. *Hills,* 30 Cal.2d 694, 701 [185 P.2d 11] ; *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].)

Defendant maintains that his identification was insufficient; that Mr. Moye testified he was unable to identify him at the police station and his only basis of identification was that the man he chased drove away in a green Studebaker automobile and three or four days later he drove by defendant's home and saw the front end of a car which resembled that automobile; that his identification by Mrs. Moye was insufficient for the reason that the shades were drawn in the bedroom and the light was inadequate to permit the positive identification of his features; that she observed him for only six or seven seconds before he left the room; that her testimony "is so factually improbable as to itself indicate that there is a mistake in identity"; that since he was between her and the light, his face would be in almost complete darkness by reason of the fact that the light came from behind him and that at no time did Mrs. Moye have sufficient light to distinguish his features; that the Moyes had telephoned the police immediately after the intruder had left their house stating that he left in a car carrying out-of-state license plates, that he wore a gray tweed suit and that he had on

a light colored hat whereas when defendant was first stopped by the police he was not wearing a gray tweed suit, did not have a hat on his head or in the car and the car did not have out-of-state license plates.

The question of identification of the perpetrator of a crime is one for determination by the trier of fact and unless the evidence of identity is so weak as to constitute no evidence at all this court cannot set aside the decision of the trial court. (*People* v. *Alexander*, 92 Cal.App.2d 230, 234 [206 P.2d 657] ; *People* v. *Waller*, 14 Cal.2d 693, 700 [96 P.2d 344] ; *People* v. *Farrington*, 213 Cal. 459, 463 [2 P.2d 814] ; *People* v. *Hightower*, 40 Cal.App.2d 102, 106-107 [104 P.2d 378].)

In order to sustain a conviction it is not necessary that the identification be positive or free from inconsistencies. (*People* v. *Deal*, 42 Cal.App.2d 33, 36 [108 P.2d 103] ; *People* v. *Waller, supra*; *People* v. *Suttles*, 61 Cal.App.2d 641, 643 [143 P.2d 506].)

Mrs. Moye's identification of defendant as the person who was in her bedroom was positive and unequivocal. She testified she could see his face from the forehead down and that it was light enough for her to see his features; that he was standing at the side near the foot of her bed and in the light which came through a door at the foot of her bed; he had been so close she could almost touch him as he came near the head of her bed on his way to the doorway leading into the hall; she noticed his manner of walking and his habit of pulling his coat forward and buttoning it. Without any hesitation she picked him out of the police show-up the moment he entered. Although Mr. Moye was unable to identify the features of the person he chased from his home, later in the same day at the police show-up he picked defendant as being of the same build, type and general structure.

The fact that defendant owned a car similar to that which was parked in front of the Moyes' house and in which the intruder drove away is a circumstance indicating guilt. (*People* v. *Kepford*, 10 Cal.App.2d 128, 130 [51 P.2d 429] ; *People* v. *Latona*, 2 Cal.2d 714, 724 [43 P.2d 260].) Moreover, defendant incriminated himself when, en route to the police station, he said: "Do you think I would be foolish enough to molest a woman with her husband in the bed—or in the room?" Up to that point the police officers had not mentioned that a man had been in the bedroom.

Defendant maintains there is no evidence sufficient to establish that he entered the premises with the intent of committing

rape and therefore "the entire judgment must be reversed for the reason that it was not worded in the alternative." This contention is without merit. ██ Defendant was originally charged with two separate counts of burglary based on the same entry of the Moyes' residence—(1), an entry with intent to commit theft and (2) an entry with intent to commit rape. At the close of the People's case the court consolidated the two counts into a single count charging "burglary with intent to commit theft and rape." The trial court properly consolidated the two counts. Defendant was charged with but one substantive offense, to wit, the crime of burglary. That crime was complete upon the entry by defendant of the Moyes' house with intent to commit grand or petit larceny or any felony. ██ The entry may have been made with the intent to commit two or more felonies but it would constitute only the one burglary. (*People* v. *Hall*, 94 Cal. 595, 597 [30 P. 7] ; *People* v. *Milne*, 60 Cal. 71, 72.) In *People* v. *Hall, supra,* the information charged defendant with entering a certain dwelling house with the intent to commit grand and petit larceny. The court held that the information charged but one offense and was good against demurrer and that to sustain a conviction the prosecution need only prove that defendant entered the building with intent to commit grand *or* petit larceny. In *People* v. *Swaile,* 12 Cal.App. 192 [107 P. 134], the defendant was accused of placing an explosive near a dwelling house with intent to injure, intimidate and terrify human beings. The court stated, at page 195, "The information is not bad for duplicity because it alleges more than one intent in the commission of the crime. Accepting the contention of appellant that the 'intent' is one of the essential elements of this offense, the rule applicable here would be the one declared in *People* v. *Frank,* 28 Cal. 507, as follows: 'Where, in defining an offense, a statute enumerates a series of acts, either of which separately or all together may constitute the offense, all such acts may be charged in a single count, for the reason that, notwithstanding each may by itself constitute the offense, all of them together do no more, and likewise constitute but one and the same offense.' (*People* v. *Leyshon,* 108 Cal. 440, 442 [41 P. 480].)" The court further stated that since it was one offense, the district attorney was not required to elect which charge he would try and that it was proper for the trial court to instruct the jury that the evidence was sufficient to sustain a conviction if

156

it showed that the defendant intended either to injure, or to intimidate, or to terrify any of the persons named in the information.

█ The intention with which an accused enters the house of another is a question of fact and where the circumstances of a particular case and the conduct of the accused reasonably indicate his purpose in doing so is to commit a larceny or any felony a verdict of guilty of the crime of burglary will not be disturbed on appeal. (*People* v. *Swenson,* 28 Cal.App. 2d 636, 639-40 [83 P.2d 70] ; *People* v. *Winters,* 93 Cal. 277, 282 [28 P. 946].) █ Defendant was identified as the person who uninvited, before 5 o'clock in the morning, made his entry into the Moyes' house and into their bedroom. Obviously he was not there for any legitimate purpose. He awakened Mrs. Moye by pulling at the bedclothes and she opened her eyes when "finally it felt like a lifting of the bed covers at the foot of my bed." When his presence was discovered he fled. The evidence and the reasonable inferences therefrom justify the conclusion that defendant entered the house with the intent to commit larceny and rape.

## THE RAVENSCROFT CASE ·

Mrs. Ravenscroft and her daughter, Marianne, lived in a studio apartment to which there were two entrances, one leading into the living room and a rear entrance from a small service porch off the kitchen. On the night of January 17, 1950, Marianne, who slept in the bedroom upstairs, retired at about 8 o'clock. Mrs. Ravenscroft slept in a bed in the living room and before she retired, sometime between 10:30 and 11 o'clock, she hooked the screen door on the service porch, locked the back door and placed a chair underneath its knob, and locked the front door and all the windows. She also turned on the light on the service porch.

At approximately 3 a. m. of the following morning she heard the front screen, which had not been locked, being pulled open. She immediately ran upstairs and asked her daughter to call the police, who came almost immediately. Investigation disclosed that the back screen door had been unhooked and the light on the service porch had been turned off. There was a small hole in the screen about three or four inches from and level with the hook and was the type of hole that "a wire clothesline would make." The light on the back porch was controlled by a switch inside the kitchen door but it could also be turned off by a butterfly switch or

cord hanging close to the bulb on the porch. On the night in question it had not been turned off by the kitchen switch.

Sergeant Stevens of the Los Angeles Police Department was on duty alone in a police car at about 3:05 a. m. on January 18, 1950, when he received a radio call to proceed to 2009 Vista Del Mar, which was the address of the Ravenscroft apartment. At about 3:08 a. m., as he turned from Franklin into Vista Del Mar, about 700 feet up the block he saw headlights leave the curb and come toward his own car. As the car approached the officer turned his flashlight on the driver of the vehicle, the car being a 1948 Studebaker sedan. Each car was going from 10 to 15 miles an hour. Stevens identified defendant as the driver of the car which he had seen pull away from the curb in the 2000 block on Vista Del Mar.

When the officer flashed his light on defendant the headlights of the Studebaker went out and remained off thereafter. The car proceeded south on Vista Del Mar without lights and with the police car in pursuit. Stevens snapped on the red light and siren of the police car about 300 feet behind defendant. A chase ensued which led past the police station with both cars reaching a speed of 70 miles an hour. Defendant finally pulled over to the curb. The officer noticed that both of defendant's shoelaces were untied; his socks were wet and there were particles of grass attached to them and inside his shoes. At the police station a piece of wire resembling a straightened out wire from a wooden coat hanger was removed from defendant's pocket. The end of the wire had on it some green paint. There was a grass lawn in front of Mrs. Ravenscroft's apartment and between the buildings. The frame of the back screen door was painted green.

Defendant asserts the evidence is insufficient to establish that he entered the Ravenscroft premises.

The evidence is clear that someone entered the rear service porch after Mrs. Ravenscroft had retired. She had personally locked the back screen door and turned on the light on the porch. She had locked the door leading from the porch to the kitchen and placed a chair under the door handle. When the police arrived the kitchen door was still locked and the chair was still wedged under the doorknob. The back screen door was unhooked and the light on the porch had been turned off not by the kitchen switch but by the switch on the service porch. Subsequently the small hole was discovered in the screen door near the hook.

158

■■ Unquestionably the commission of a crime may be adequately established entirely by circumstantial evidence and a conviction may not be set aside because the evidence is susceptible of two reasonable inferences, one looking to defendant's guilt and the other to his innocence. (*People* v. *Green,* 13 Cal.2d 37, 42 [87 P.2d 821].) Defendant was observed in close proximity to the Ravenscroft premises. It was necessary for the police car with its red light showing and its siren operating to pursue defendant for many blocks before he could be brought to a stop. ■ His flight is a circumstance which may be considered with all the other facts as tending to prove a consciousness of guilt. (*People* v. *Santora,* 51 Cal.App.2d 707, 710 [125 P.2d 606].) ■ False and inconsistent statements are also an indication of consciousness of guilt. (*People* v. *Anderson,* 90 Cal.App.2d 326, 333 [202 P.2d 1044]; *People* v. *Cooper,* 81 Cal.App.2d 110, 117 [183 P.2d 67].) ■ Defendant denied he had been chased by a police car and insisted he had stopped immediately after he heard the siren. A police officer, other than the driver of the pursuing police car, positively identified defendant as the driver of a 1948 Studebaker who had been chased past the Hollywood police station by a police car flashing a red light and with its siren screaming. On the way to the police station defendant was asked what he had been doing on that street. He replied he had been selling liquor and when the officer stated it was 3 a. m. and there were no liquor stores in the vicinity, defendant replied: ''Well, I don't choose to tell you. It is your business to find out.'' Defendant's explanation of the condition of his feet was that he had untied his shoelaces because his feet hurt and his socks were damp because he had washed them in the forenoon of the preceding day and placed them on the grass to dry. He denied ever having seen the wire which was removed from his coat pocket. From the circumstances hereinabove related, notwithstanding defendant's denials, the court was justified in concluding that it was defendant who had entered the service porch of the Ravenscroft premises.

Affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied February 14, 1951, and appellant's petition for a hearing by the Supreme Court was denied March 5, 1951. Carter, J., and Schauer, J., voted for a hearing.