[Crim. No. 856. Fourth Dist. Oct. 16, 1952.]

THE PEOPLE, Respondent, v. JOHN WESLEY STEWART, Appellant.

688

John M. Nairn for Appellant.

Edmund G. Brown, Attorney General, and Michael J. Clemens, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Defendant was convicted by a jury of first degree burglary on December 24, 1951. The action was consolidated for trial with another action in which defendant was accused and found guilty of violating section 4532 of the Penal Code in escaping from a road camp. No appeal is being prosecuted from the judgment in the latter case.

It is claimed that the evidence is insufficient (1) as to the establishment of defendant's intent to commit theft at the time of entry into the building; (2) to show that the burglary was committed in the nighttime; and (3) to show burglary of the first degree. He cites such cases as *People* v. *Golembiewski,* 25 Cal.App.2d 115 [76 P.2d 717]; *People* v. *Gibson,* 107 Cal.App. 76 [289 P. 937]; and section 1097, Penal Code.

On the night of December 23, about 10:30, defendant, an escapee from the road camp, met a soldier at a bar in Lamont. Defendant was driving a blue Kaiser car but had no money. They discussed the possibility of picking up some girls. After visiting several of the bars, they proceeded to Maricopa Farms, because defendant said he knew a girl, Myrtle Dawn, who lived there. They first visited with some neighbors of the Dawns. Defendent told the soldier he was going down to his "buddy's" or "brother's" house, i.e., the "Gates" cabin, to get some clothes, etc. They arrived there about one a. m. and found the front door padlocked and the house was in complete darkness. Defendant tore off the padlock and entered. He immediately went to the gas range and fried some potatoes and other food, ate, and went to bed. The next morning they went to a neighboring home. Defendant drove away in his car and disappeared for a while. He reappeared in the afternoon and later disappeared sometime between 5 and 7 p. m. During the interval the soldier had been warned to be careful and not to associate with defendant. The soldier did not see the defendant again until about 9:30 p. m., at which time he drove up in his car and had three or four pints of gin and some money on his person. Defendant tried to persuade the soldier to go along with him but the soldier refused. Defendant departed alone about 11 p. m.

The evidence further shows that Mrs. Gates had known defendant in the past; that he had stayed at their home for about one week in October; that on December 23, she and her family left their family home locked and were visiting some friends in Bakersfield; that someone phoned her on December 26 and told her that her home had been broken into. She testified she never gave defendant permission to enter her home at any time. On her return she found that a radio, musical powder box, two towel sets and some robes had been taken. Some of the articles were from a locked cedar chest that had been broken into.

On December 24, about noon, defendant went to his parked car, brought the powder box into the home of Myrtle Dawn,

and gave it to her for a Christmas present. On December 26, when the neighbors discovered the house had been broken into and was in a shambles, a new lock was placed on the door and the owner was notified. On December 24, between 8 and 9 p. m. defendant went to a bar several miles from there and asked for a bottle of gin on credit, which was refused. He returned to his car and brought in a bundle of towels taken from the Gates home and exchanged it for a pint of gin. The owner of the bar reported defendant's car number to the sheriff.

At the trial defendant denied being an escapee, denied being at the Maricopa Farms on any of the occasions mentioned, and denied ever seeing the soldier or the five other witnesses who testified as to his presence near the scene of the burglary on the occasions mentioned. He claimed he was in Oklahoma until December 24, and that on that evening he was in Earlimart, playing for a dance; that the blue Kaiser car he was driving when apprehended in Fresno belonged to a "kid" whom the "law picked up at Fresno"; and that he asked the defendant to keep his car until "he got out." He admitted a prior conviction of felony for theft of an automobile in New Mexico, and that he served five years' sentence therefor; and that he was subsequently committed to San Quentin from Kern County, California, for escaping from a county hospital while in custody.

The jury returned a verdict of guilty on both counts within one-half hour after retirement. Complaint is made that the jury did not have sufficient time to fully consider the facts and apply the law as given by the court. Disregarding defendant's testimony, which the jury had the right to do, there was no conflict in the evidence and the jury properly determined that a burglary had been committed.

There was no question about defendant's breaking and entering an inhabited dwelling in the nighttime, in violation of sections, 459 and 460 of the Penal Code. ▇▇ As to what defendant's intentions were at the time of the breaking and entering was an open question for the determination of the jury. (*People* v. *Kittrelle,* 102 Cal.App.2d 149, 156 [227 P.2d 38]; *People* v. *De Soto,* 33 Cal.App.2d 478 [92 P.2d 466].)

▇▇ Where the circumstances of a particular case and the conduct of the accused reasonably indicate that his purpose in entering is to commit a theft, either petty or grand, or any felony, a verdict of guilty of the crime of burglary will not be disturbed on appeal. (*People* v. *Kittrelle, supra.*)

■ The forcible and unlawful entry into the unoccupied home at an unusual hour under the pretense that it was his brother's or buddy's home, and that he wished to get some clothes of his that he apparently falsely claimed were in there, the immediate commission of petty theft by helping himself to the owner's food, the familiarity of the accused with the burglarized premises, the dealing with the stolen property as his own, eating the food, giving the musical powder box to a girl friend, and the exchange of the towels for gin, which property was taken at some undisclosed time, the giving of false testimony on the witness stand, and his failure to explain his actions or intent at the time he forcibly entered the premises, are all circumstances which could be considered by the jury in inferring that the defendant, upon breaking and entering into the Gates home did so with the intent to commit theft. (*People* v. *Carroll*, 79 Cal.App.2d 146 [179 P.2d 75] ; *People* v. *Pineda*, 41 Cal.App.2d 100 [106 P.2d 25].)

■ The burglarious intent could be reasonably and justifiably inferred from the unlawful and forcible entry alone. (*People* v. *Fitch*, 73 Cal.App.2d 825, 827 [167 P.2d 211].)

■ The fact that the house was temporarily unoccupied at the time, due to the visit by the occupants to another city, would not reduce the offense to that of second degree. (*People* v. *Allard*, 99 Cal.App. 591 [179 P. 182].) ■ Defendant's reliance on the time of the larcenous taking of the various articles does not aid his cause since the crime of burglary does not require that a theft or felony be actually committed. The forcible entry with the felonious intent to commit theft is sufficient even though, after the entry, the burglar voluntarily abandons his unlawful purpose. (*People* v. *Shaber*, 32 Cal. 36 ; *People* v. *Novo*, 12 Cal.App.2d 525 [55 P.2d 915].) The crime of burglary was completed and consummated the minute the defendant entered the Gates residence with intent to commit theft. ■ There is sufficient evidence to show that defendant entered an inhabited dwelling-house ; that such entry was with burglarious intent and was made in the night-time. Therefore, it is burglary in the first degree, as defined in section 460 of the Penal Code.

Judgment affirmed.

Barnard, P. J., concurred.