[Crim. No. 13371. Second Dist., Div. One. Aug. 14, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. SALVADOR JOSE GONZALES, Defendant and Appellant.

Gilbert F. Nelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Raymond M. Momboisse and Stephen Cooper, Deputy Attorneys General, for Plaintiff and Respondent.

LILLIE, J.—Defendant and two codefendants, Mayor and Linarez, were charged with burglary (§ 459, Pen. Code); defendant was charged with three prior felony convictions—grand theft (1959) and violation, section 10851, Vehicle Code (1961) and section 11500, Health and Safety Code (1961)—all of which he admitted. Called for trial, on motion of defendant and Mayor, the cause was severed; thereafter Linarez was tried separately for the same offense and convicted. The cause of defendant and Mayor was tried to a jury; both were convicted of second degree burglary. Defendant appeals from the judgment.

Around 11:25 a.m. on February 18, 1966, Officer Westray, on patrol in a police car, was directed to the residence of Mr. and Mrs. Parks; he observed from the outside through the dining room window that the rear door of the residence was open, returning to the police car he relayed his observation by radio to the station. As Officer Courtney turned into the alley at the rear of the residence he observed a car parked on the street with one door and the trunk open and Linarez standing near it; he recorded the license number. As the officer approached the rear of the house someone appeared in the doorway; he called to him to halt but the person turned around and ran back into the house; he approached the rear doorway

and heard Officer Westray at the front of the house call to someone to halt, then heard a shotgun blast. Officer Westray had gotten his shotgun from the patrol car and returned to the northeast corner of the lot; he saw Officer Thomas at the northwest corner; at that point the front door suddenly opened and defendant and one Leon came running out; Officer Westray shouted to them to halt, they looked directly at the officer, crouched, turned and ran back toward the house; defendant ran into the house again but Leon stopped by a bush near the front of the house, turned toward Officer Westray and dropped onto one knee behind the bush; unable to see Leon's hands, Westray believed he might be armed and about to fire; he then shot Leon. The front door of the house slammed shut; Officer Westray anticipating that defendant would go out the back door, ran along the side of the house and into the back yard where he met Officer Courtney and went to the back door; he found defendant standing in the doorway of the rear bedroom and took him at gun point out the front door turning him over to Officer Thomas. Officer Westray returned to the house and found Mayor lying underneath the bed; he ordered him out and took him outside to the other officers; Leon who had been shot was lying on the front porch with a sock on one hand, another sock was lying under him.

The front door of the residence was open and had been broken and the rear door had been jimmied; the wood in the frame of the window in the rear door had been split. Mr. Parks saw a screwdriver which he had never seen before lying on the living room floor. Various articles of furniture, including the television, radio, and typewriter had been piled in the den near the back door; all of Mr. Parks' suits were lying in a heap on a bedspread on the floor in the hall; the television remote control tuner, a Ronson cigarette lighter and a sterling silver pin set with diamonds were missing. Defendant was searched at the time of the arrest and the television tuner was found in his pocket; the cigarette lighter and diamond pin were found in the pockets of Leon at the hospital.

Mayor represented himself; on his defense he called Linarez as his witness; Linarez previously had been tried for the same offense and convicted. Mayor's examination of Linarez showed little more than Linarez' involvement in the burglary and his acquaintance with the other burglars. Finally, thwarted by objections, Mayor ended his examination. Then defendant's counsel took Linarez as defendant's witness.

Linarez testified that he and Leon went to a bar on the morning of the burglary where they saw defendant and Mayor; he and Leon went to the restroom where they planned the burglary but he never told defendant or Mayor that they were planning a burglary and never heard Leon tell them; he heard Leon ask defendant and Mayor to help him move some of his clothes from his aunt's house; they drove to the Parks' residence, Leon went to the house and the others waited in the car; five minutes later Leon returned and told them they could come in now; Mayor and defendant went in and he left to go to the store for cigarettes; when he returned he saw the police car and did not stop.

On cross-examination Linarez admitted having a conversation with Officer Fyffe but denied telling the officer that he had been told by the other three that they were going to commit a burglary, or that he waited in the alley during the burglary, became frightened, tried to leave but had car trouble and had to do some repair work on the car. The defendant did not testify.

On rebuttal Officer Fyffe testified that Linarez told him that he had been driving a borrowed car when he met Leon, Mayor and defendant; Leon asked him to drive them to Downey to commit a burglary; he drove them into the alley behind the Parks' residence and the other three went to the house while he waited a few minutes, then drove out of the alley but the engine stalled and he got out, looked at the engine, repaired it and drove back to Firestone where he was arrested shortly thereafter.

 Appellant's sole contention is that the statement of Linarez should have been excluded under *People* v. *Aranda,* 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265]; that the statement cannot bind him, a codefendant, and that in view of the direct conflict on the issue of his knowledge that a burglary was going to be committed, the admission of Linarez' statement requires a reversal.

The rules set out in *People* v. *Aranda,* 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265], do not here control. Having previously been tried and convicted at a separate trial, Linarez was not a codefendant in defendant's case; he was no more than a witness for the defense, called first by Mayor and later by defendant, who examined him for whatever advantage Linarez might provide. *People* v. *Aranda,* 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265], requires a severance where more than one defendant is being tried, if the People choose

to introduce the confession of a codefendant which implicates the other and which cannot fairly be edited to exclude such implication; if there is no severance, the introduction of an inadmissible confession of one implicating the declarant's codefendant is error as to such codefendant and may be prejudicial in spite of an instruction limiting its effect. ▮ However, there is nothing in *Aranda* which requires exclusion of an incriminating statement of a nonparty witness, nor do the *Aranda* rules require that the introduction of such a statement be prefaced by a showing that the nonparty witness had been advised of his constitutional rights prior to making the statement. If *Aranda* were to control the situation here, it would permit defendant and Mayor to use Linarez' testimony in their defense and take for themselves whatever benefit it offered without suffering the danger of impeachment of Linarez by means of statements which were available against him at his own trial.

▮ While Mayor in propria persona first called Linarez as his witness, he ran afoul of objections interposed by the prosecution and finally terminated his examination in favor of defendant. Up to this point Linarez had said nothing about lack of knowledge of the planned burglary on the part of Mayor and defendant. Testimony to this effect was elicited only by defendant's counsel during his examination of Linarez whom he retained on the stand as defendant's witness. In the process Linarez testified contrary to prior statements he had made to the police. Should defendant be able to take advantage of Linarez' subsequent inconsistent version of what occurred without subjecting himself to the implicating statements previously made by Linarez? We think not. The officer's testimony concerning those prior implicating statements made by Linarez was properly offered for the purpose of impeaching the witness Linarez.

▮ The record shows overwhelming evidence of defendant's guilt. The robbery was not and could not be disputed. Here the evidence unquestionably established an unlawful and forcible entry of the Parks' residence—the marks on the woodwork and the split wood in the frame of the rear window indicating that the rear door and window had been jimmied, the presence in the house of a large screwdriver which had not been there before, and the open door which had been broken in the absence and without the permission of the Parks. "From this alone, burglarious intent could be reasonably and justifiably inferred (*People* v. *Michaels,* 193 Cal.App.2d 194,

199 [13 Cal.Rptr. 900]; *People* v. *Stewart,* 113 Cal.App.2d 687, 689 [248 P.2d 768])." (*People* v. *Nichols,* 196 Cal.App. 2d 223, 227 [16 Cal.Rptr. 328].) Further, as to defendant's intent, he was found in Parks' house by the police. His knowing participation in the burglary is established by his attempted flight when confronted with the officer who told him to halt as he left the house (*People* v. *Jordan,* 204 Cal.App.2d 782, 786 [22 Cal.Rptr. 731]) and by defendant's possession of the television tuner which had been removed from the Parks' residence. ■■■ Possession of recently stolen property is so incriminating that when coupled with only slight corroboration in the form of statements or conduct warrants conviction of burglary. (*People* v. *McFarland,* 58 Cal.2d 748, 754 [26 Cal.Rptr. 473, 376 P.2d 449].) ■■■ The only evidence defendant attempted to offer relative to his lack of intent to commit burglary was the testimony of Linarez; he did not take the stand on his own behalf. The evidence warranted the reasonable inference by the jury that defendant knowingly and with criminal intent participated in the burglary of the Parks' residence.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.