Filed 5/14/14  P. v. Carter CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B242342 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA083820) |
| v. | |
| JOSHUA ALEXANDER CARTER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Michael D. Carter, Judge.  Affirmed.

Cynthia L. Barnes, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Susan Sullivan Pithey, Supervising Deputy Attorney General, Rene Judkiewicz, Deputy Attorney General, for Plaintiff and Respondent.

_____

Defendant Joshua Alexander Carter appeals from a judgment entered after a jury convicted him of one count of first degree robbery (Pen. Code, §§ 211, 212.5, subd. (b) [ATM]),[1] three counts of second degree robbery (§ 211), and two counts of attempted robbery (§§ 211, 664). In connection with the first degree robbery count and two of the three counts of second degree robbery, the jury found to be true the allegation that appellant used a deadly weapon within the meaning of section 12022, subdivision (b)(1). He was sentenced to an aggregate term of nine years in state prison.

On appeal, appellant contends that there was insufficient evidence to support the jury's finding that he personally used a bolt as a dangerous or deadly weapon during the commission of the first degree robbery of Shannon Burns and that there was insufficient evidence to support his conviction for second degree robbery of George Cisneros. We affirm.

## FACTS AND PROCEEDINGS BELOW

### I. Prosecution Evidence[2]

#### A. First-Degree Robbery of Shannon Burns (Count 4)

On January 28, 2011, at around 8:30 a.m., Togo's store manager Angel Rosales was at the Hastings Village shopping mall in Pasadena. He was getting ready to open Togo's at 9:00 a.m. Rosales saw appellant outside and thought appellant looked suspicious, so he told a young employee to be careful and call Rosales to the front of the store if she thought appellant was going to enter the store. Rosales watched appellant and saw him sit down near Togo's for five to ten minutes, drink Mountain Dew from a bottle, and leave the bottle behind.

At around 8:40 a.m., Shannon Burns was in the Hastings Village mall and went to an ATM near Togo's to withdraw $190. She then walked to a seating area in the mall, sat

---

[1] Further statutory references are to the Penal Code.

[2] Appellant was in pro. per. at trial.

down and was about to put away the money when appellant approached from behind. He asked, "'Hey, how's it going?'" As Burns was holding the cash in her hand, she made eye contact with appellant. He demanded, "'Give it to me.'" Burns responded, "'Excuse me?'" Appellant demanded again, "'Give it to me. Give it to me now.'" As appellant spoke, he held in his left hand a metal bolt that he shook twice to make sure that Burns saw the bolt. The bolt was approximately an inch and a half in diameter with an octagon-shaped head and had an inch thick shaft. Appellant held the shaft of the bolt so only the head of the bolt showed above his hand. The way that appellant held the metal bolt made Burns feel threatened. Burns thought appellant was going to hurt her with the bolt. The second time that appellant shook the bolt, Burns held the cash toward him and appellant snatched it from her hand. He then ran away. Burns called 911. The police came soon afterward.

At around 8:52 a.m., Pasadena Peace Officer Elgin Lee met with Burns, who was "balled up" near Togo's. Rosales approached Officer Lee and told him that Rosales saw a man who's description matched Burns's description of appellant and that the man had left a green Mountain Dew bottle in the parking lot. A senior criminalist with the Los Angeles Sheriff's Department opined that the DNA analysis of the Mountain Dew bottle and appellant's DNA was a match and that the probability of a random match in the White population was 1 in 35 sextillion, in the Black population was 1 in 49.3 quintillion and in the Hispanic population was 1 in 1.6 septillion.

**B. Second-Degree Robbery of Ana Chapple (Count 6)**

In the late morning of February 8, 2011, Ana Chapple and her husband parked their car in downtown Los Angeles and saw appellant in the parking lot. While Chapple's husband went to a meeting, Chapple returned to the parking lot by herself an hour later and saw that appellant was in the same place. Chapple sat in the car waiting for her husband. When she saw appellant approaching her car, Chapple put her keys in the ignition to start the car but appellant reached the driver's side door and tried to force the partially open window further down and told Chapple "'Don't even think about it.'" Chapple saw that appellant was holding in his left hand a steel bolt, which he held inside

3

the car window. He told her he wanted any jewelry or money she had and Chapple complied.

### C. Second-Degree Robbery of George Cisneros (Count 5)

On February 20, 2011, at about 5:55 p.m., when it was still light outside, George Cisneros got off the Gold Line at Memorial Park in Pasadena and got on a bus. After getting off the bus, Cisneros was walking alone when a man's voice behind him demanded that Cisneros give his money and cell phone to the man. Cisneros turned around and saw appellant two or three feet away holding a knife in his raised left hand so that the blade was pointing toward Cisneros's head.

Cisneros gave the man $10 that he took out of his wallet. He told the robber that his cell phone, which was in the backpack that he wore on his back, was a cheap, prepaid phone. As Cisneros proceeded to get his cell phone, the robber asked Cisneros what was in the backpack. Cisneros answered that his laptop computer was inside. After Cisneros opened his backpack, the robber demanded, "'Give me your laptop.'" Cisneros at first hesitated, saying he had important documents on his computer, but the robber said "I'm serious" with his knife still pointing at Cisneros and Cisneros did not "want to have any trouble" and gave the man the laptop. The robber grabbed the computer and asked for the adaptor or charger, which Cisneros gave to him. The robber turned away and then turned back asking for the password to the laptop and Cisneros replied, "No password." The robber then ran away with Cisneros "still looking at him . . . ."

Cisneros identified appellant as the robber from a "six pack" on April 19, 2011. Before looking at the photographs, the detective admonished Cisneros that the photographs may or may not be of the person involved. Cisneros selected appellant.

At trial Cisneros testified, "I'm not too sure that [appellant] is the person," saying "when I saw him, the cheeks were a little bit bigger" and "lips, a little bit bigger." Cisneros also testified that when he selected appellant's photograph from the six pack, he "wrote that that person looks similar, but I wasn't sure." He selected appellant's photograph because he recognized "the lips, the cheeks, and the mustache."

4

### D. Second-Degree Robbery of Victoria Kolender (Count 3)

On February 28, 2011, at approximately 5:37 p.m., when it was not very dark, while Frank Guthrie was waiting in his car to attend a class in the area of Waverly Street and Fair Oaks in Pasadena, he saw appellant tap a woman's shoulder and point at her. The woman, Victoria Kolender, reached for her backpack and opened her wallet. Appellant grabbed what appeared to be credit cards from Kolender, and then ran off, momentarily stopping to look at Guthrie. Guthrie and appellant made eye contact before appellant left.

Guthrie heard Kolender say, "'I got robbed'" and was certain that Kolender was robbed.

### E. Attempted Second-Degree Robbery of Jade Beauvoir (Count 2)

On March 8, 2011, at about 9:10 p.m. in Pasadena, Jade Beauvoir was walking home alone. She felt someone nearby, and stopped to look. She saw appellant. Beauvoir asked if she had met appellant at the yoga studio she managed, and he mumbled, as if he were confused. Not feeling comfortable, Beauvoir changed directions to walk where there were more people on the street. Appellant then grabbed Beauvoir's arm, and said, "'You are not going anywhere.'" He demanded that Beauvoir hand over her laptop computer. Beauvoir screamed, "No," after which appellant began punching her. Beauvoir broke free, fled and yelled for help.

### F. Attempted Second-Degree Robbery of Emily Cook (Count 1)

On March 10, 2011, at 10:10 p.m., Emily Cook was walking home in Pasadena. She heard someone rush up behind her. She partially turned, and saw appellant. He told her, "'You know how this works. Give me all your money.'" Cook said, "'No.'" Appellant then used his fist to hit Cook. She broke appellant's grip and ran away.

### G. Police Testimony Regarding Six-Packs Shown to Witnesses

Detective Carolyn Gordon of the Pasadena Police testified that she showed the same "six pack" of photographs to all the witnesses whom she interviewed based on their description of the assailant, and that they all selected photograph No. 2, appellant's photograph. Detective Gordon identified appellant in court as the person in photograph

5

No. 2. She also identified appellant in court as the same person who was depicted in a booking photograph taken on the day he was arrested.

Specifically, on April 19, 2011, Detective Gordon met with Cisneros and, prior to showing him the "six pack," admonished that the photographs may or may not be of the assailant. Cisneros selected photograph No. 2. As with all witnesses, Detective Gordon had Cisneros circle the photograph he chose, and not just the number, to make sure that the number matched the photograph.

Detective Gordon interviewed appellant on March 11, 2011. She photographed his clothing, as well as everything he had, including a backpack booked into evidence. The backpack contained a laptop computer.

### H. Stipulation

The parties stipulated that appellant is left-handed.

## II. Defense Evidence

Appellant called Detective Amy Sundquist as a witness, and asked questions about the February 8, 2011 incident that was the basis for count 6. Appellant did not testify.

## III. Conviction and Sentencing

The jury convicted appellant on all counts: in count 1 of attempted second degree robbery of Cook, in count 2 of attempted second degree robbery of Beauvoir, in count 3 of second degree robbery of Kolender, in count 4 of first degree robbery of Burns as well as finding true the allegation of use of a deadly and dangerous weapon in count 4, in count 5 of second degree robbery of Cisneros as well as finding true the allegation of use of a deadly and dangerous weapon in count 5, and in count 6 of second degree robbery of Chapple including finding true the allegation of use of a deadly and dangerous weapon in count 6.

Appellant was sentenced to an aggregate term of nine years in state prison. Specifically the court sentenced appellant to state prison to a midterm of four years on the principal count of first degree robbery of Burns (count 4) plus an additional and consecutive one year term for the deadly weapon enhancement related to that count. The trial court ordered the terms on the three second degree robbery counts (count 3-

6

Kolender, count 5-Cisneros, count 6-Chapple) to run consecutive to the principal count, adding one-third the middle term or one year, for each count. The court added an additional four months for the weapon enhancement related to one second degree count (count 5-Cisneros) and struck the term for the remaining weapon enhancement on the other second degree robbery count (count 6-Chapple) pursuant to section 1385, subdivision (c). As to the two attempted robbery counts (count 1-Cook, count 2-Beauvoir), the trial court ordered count 1 to be served consecutive to the principal term adding eight months as one-third the midterm on that count and ordered the term on the remaining attempted robbery count (count 2) to be served concurrent to the principal term. Appellant's total state prison term was set at nine years. Appellant was awarded 474 days of custody credit including conduct credit.

**DISCUSSION**

On appeal, appellant makes two sufficiency of the evidence claims. We affirm.

**I.  Substantial evidence supported the finding that appellant used the bolt as a dangerous or deadly weapon in Count 4.**

Appellant contends that the evidence was insufficient to prove the section 12022, subdivision (b) allegation that he personally used a bolt as a dangerous or deadly weapon during the commission of the first degree robbery of Shannon Burns at an ATM in count 4.

We apply the substantial evidence standard, examining the evidence in the light most favorable to the judgment, and determining whether the evidence is reasonable, credible, and of solid value so as to allow a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. (*People v. Prince* (2007) 40 Cal.4th 1179, 1251.) The question is not whether we believe that the evidence establishes guilt beyond a reasonable doubt; instead, we review the evidence favorably to the prosecution to determine whether any rational jury could have reached the verdict that it did. (*Jackson v. Virginia* (1979) 443 U.S. 307, 318–319 [99 S.Ct. 2781, 61 L.Ed.2d 560].) "'If this "substantial" evidence is present, no matter how slight it may appear in comparison with the contradictory

7

evidence, the judgment will be affirmed.'" (*In re Gustavo M.* (1989) 214 Cal.App.3d 1485, 1497.)  We examine the bare legal sufficiency of the evidence, not its weight. (*People v. Moye* (2009) 47 Cal.4th 537, 556.)

Section 12022, subdivision (b)(1) states, in pertinent part:  "Any person who personally uses a deadly or dangerous weapon in the commission of a felony . . . shall be punished by an additional and consecutive term of imprisonment in the state prison for one year . . . ."  As parties agree, the California Supreme Court has identified two categories of weapons--the first category is weapons such as guns, dirks and blackjacks which are "dangerous or deadly" to others in the ordinary use for which they are designed or are objects or instruments that by their intrinsic nature are dangerous and deadly; and the second category is "ordinary razors, pocket-knives, hatpins, canes, hammers, hatchets and other sharp or heavy objects, which are not weapons in the strict sense of the word and are  not 'dangerous or deadly' to others in the ordinary use for which they are designed" but may be dangerous and deadly if it may be inferred that the possessor of the object intended to use the object as a weapon.  (*People v. Graham* (1969) 71 Cal.2d 303, 327-328; see *People v. Ricardi* (2000) 9 Cal.App.4th 1427, 1433.)  A bolt is not an inherently dangerous or deadly weapon and falls into this second category.

For an object in this second category such as a bolt, "its character as a dangerous or deadly weapon may be established, at least for the purposes of [a particular] occasion," if it "is *capable* of being used in a dangerous or deadly manner, *and* it may be *fairly inferred* from the evidence that its possessor *intended* on a particular occasion to use it as a weapon should the circumstances require."  (*People v. Reid* (1982) 133 Cal.App.3d 354, 365, original italics.)  The bolt was capable of being used in a dangerous or deadly manner because appellant could have used it as a bludgeon or club to beat or strike a victim.  (*People v. Hood* (1958) 160 Cal.App.2d 121, 122 [kit of tools, unloaded gun, toy gun or bottle of whiskey capable of being used as bludgeon weapon].)  It can also be fairly inferred that appellant intended to use it as a weapon should the circumstances require when he robbed Burns.  According to Burns, appellant shook the bolt in his hand twice to make sure that Burns saw it as he demanded her money and Burns felt

8

threatened. Thus, the jury could fairly infer that appellant intended to use the bolt to strike Burns if she did not comply. Thus, we find sufficient evidence supported the jury's conclusion that the bolt was a dangerous or deadly weapon for purposes of section 12022, subdivision (b).

"In order to find 'true' a section 12022(b) allegation, a fact finder must conclude that, during the crime or attempted crime, the defendant himself or herself intentionally displayed in a menacing manner or struck someone with an instrument capable of inflicting great bodily injury or death. [Citations.]" (*People v. Wims* (1995) 10 Cal.4th 293, 302-303.) "By employing the term 'uses' instead of 'while armed' the Legislature requires something more than merely being armed. [Citation.]" (*People v. Chambers* (1972) 7 Cal.3d 666, 672.) "The litmus test for the distinction is functional: did the defendant take some *action* with the [weapon] *in furtherance of the commission* of the crime? If so the [weapon] was 'used' . . . . If, on the other hand, the defendant engaged in no weapons-related conduct, or such conduct was incidental and unrelated to the offense, no 'use' occurred . . . . [Citations.]" (*People v. Granado* (1996) 49 Cal.App.4th 317, 324, fn. 7.)

Here, appellant did not merely hold the bolt, but shook the bolt in his hand twice to make sure that Burns saw it as he demanded her money. "[W]hen a defendant deliberately shows a [weapon], or otherwise makes its presence known, and there is no evidence to suggest any purpose other than intimidating the victim (or others) so as to successfully complete the underlying offense, the jury is entitled to find a facilitative use rather than an incidental or inadvertent exposure." (*Granado*, *supra*, 49 Cal.App.4th at p. 325.) We find the true finding of appellant's use of a deadly or dangerous weapon is supported by sufficient evidence.

**II. Substantial evidence supported the identification of appellant as the robber in Count 5.**

Appellant argues that his convictions in count 5 (second degree robbery of Cisneros) must be reversed because the evidence was insufficient to support his identification as the robber. We disagree.

The question on appeal is not whether the evidence as judged by the reviewing court establishes guilt beyond a reasonable doubt, but whether substantial evidence was presented at trial to justify the fact finder's conclusion. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) The testimony of a single witness, unless physically impossible or inherently improbable, is sufficient to support a conviction. (See Evid. Code, § 411; *People v. Young* (2005) 34 Cal.4th 1149, 1181.) This includes the testimony of a single witness on the issue of identification. (*People v. Boyer* (2006) 38 Cal.4th 412, 480.) Even if the witness is not positive about the identification, the testimony may still support the verdict. (*People v. Midkiff* (1968) 262 Cal.App.2d 734, 740 ["identification of the defendant need not be positive"]; *People v. Wiest* (1962) 205 Cal.App.2d 43, 45 ["[t]estimony that a defendant 'resembles' the robber [citation] or 'looks like the same man' [citation] has been held sufficient"].)

To the extent that there are any weaknesses in an eyewitness identification, the weight to be given the witness's testimony is for the jury to determine. (*People v. Elwood* (1988) 199 Cal.App.3d 1365, 1372; *People v. Echevarria* (1992) 11 Cal.App.4th 444, 453 ["'the claimed weaknesses of identification testimony are a matter of argument to the trier of fact and cannot properly be directed to this court or effectively urged on appeal.' [Citation]."]) "The question of identification of the perpetrator of a crime is one for determination by the trier of fact and unless the evidence of identity is so weak as to constitute no evidence at all this court cannot set aside the decision of the trial court." (*People v. Kittrelle* (1951) 102 Cal.App.2d 149, 154.)

Here, the weaknesses in Cisneros's identification testimony were for the jury to weigh and resolve. Although Cisneros did not positively identify appellant at trial, he identified appellant's photograph from the six pack stating photograph No. 2 was "similar" but he "wasn't sure." Cisneros testified that he selected photograph No. 2 because he recognized "the lips, the cheeks, and the mustache" but at trial stated he was not sure appellant was the robber because "when I saw him, the cheeks were a little bit bigger" and "lips, a little bit bigger." Detective Gordon, however, unequivocally identified appellant as the person in photograph No. 2 of the six pack. Because

Cisneros's identification of appellant from the six pack and at trial is not so weak as to constitute "no evidence at all," we affirm.[3]

## DISPOSITION

We affirm the judgment.

NOT TO BE PUBLISHED.

CHANEY, J.

We concur:

ROTHSCHILD, Acting P. J.

MILLER, J.[*]

---

[3] We note that the Attorney General's office argued that Cisneros's laptop was in appellant's possession when he was arrested. However, the cited portions of the record do not establish that the recovered laptop was the one taken from Cisneros.

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.