Filed 4/12/16  P. v. Allen CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B260800 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA426496) |
| v. | |
| FORREST ALLEN, | |
| Defendant and Appellant. | |

APPEAL from the judgment of the Superior Court of Los Angeles County. Mildred Escobedo, Judge.  Affirmed.

Greg Demirchyan, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Russell A. Lehman, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant Forrest Allen was convicted of one count of attempted burglary. Defendant contends there is insufficient evidence demonstrating the requisite specific intent for attempted burglary, and that the court erred in precluding him from presenting evidence on his defense of voluntary intoxication.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged by information with one count of first degree residential burglary (Pen. Code, § 459). Trial by jury proceeded in December 2014. The testimony received at trial revealed the following material facts.

On the evening of June 24, 2014, Esther Finkelstein was at home alone in her apartment on Los Feliz Boulevard in the city of Los Angeles. The apartment building has about 20 units, each of which faces the front of the property where there is a courtyard. An alley runs along the back of the building. There are electrical utility boxes that "jutt[]" out at the back of the building, and the window of Ms. Finklestein's bathroom is just above those boxes.

Ms. Finkelstein was sitting on her bed answering emails. Around 8:00 p.m., she heard a "clattering" or "banging" noise coming from her bathroom. It sounded like a window screen falling to the ground. From her bed, she could see her bathroom and she saw that a man was trying to climb through the window. The lower part of his leg was coming through the window, with his foot on the window sill. She could see the rest of the man's body, hunched over, through the frosted glass of the closed portion of the window.

Ms. Finkelstein shouted at the man to get away, and he immediately jumped down from the window. She went to grab a knife from her kitchen, and when she turned back to the bathroom, the man was gone. Ms. Finkelstein called 911. She then noticed that the man was pacing back and forth in the alley behind her building. Ms. Finkelstein called her apartment manager to report that someone was trying to break in and that she had phoned the police. Shortly thereafter, she saw the man in front of the apartment building, leaning on the railing near her apartment.

2

Within a few minutes, the police arrived and detained the man without incident. Ms. Finkelstein identified defendant as the man she saw trying to climb through her window. At the time of his arrest, defendant was not carrying gloves or any tools customarily associated with burglaries, nor was he carrying a weapon. It was discovered that the fallen window screen had been ripped.

Defendant testified that in June 2014, he was homeless and unemployed. He had been placed in psychiatric hospitals on several occasions, and had been prescribed psychiatric medications. On the day before the incident, he was not taking any psychiatric medications. Instead, he was "self-medicat[ing]" with other drugs. He took some of those drugs around 10:00 a.m. on the day of the incident.

Defendant then walked for hours. It was a hot day so he was exhausted. When he came upon Ms. Finkelstein's building around 8:00 p.m., he noticed a sign outside the building that he mistook as a "for sale" sign. Defendant said he did not recall whether it was actually a "no vacancy" sign, and he admitted he was educated and able to read English. He believed the sign indicated the building was vacant, and he often slept in vacant buildings. Defendant explained he was only "seeking a refuge to sleep." Defendant said he was on the "verge of fainting" and "delirious from sleep deprivation."

Defendant went to the front of the building first and yelled but nobody responded so he thought the building was vacant. Defendant said he did not knock on any of the doors to see if anyone responded. He did not try to open any of the apartment doors or windows that faced the front of the building because they were all closed and it was not his intent to force anything open or vandalize the property. Defendant said he decided to walk around the building to see if there were any open windows or doors on the back side of the property.

Once defendant got around to the back, he saw an open window. Defendant climbed up on the electrical boxes so that he could look in the window and see if the building was vacant. He denied having any intent to steal, but admitted he intended to go inside to sleep if it looked vacant. Defendant said he did not rip the window screen and never got a chance to verify if the building was vacant because he heard Ms. Finkelstein

3

yell, so he jumped down. He immediately tried to apologize. Defendant did not see Ms. Finkelstein in the window so he went back to the front of the building to try to apologize to her, but the police arrived shortly thereafter and arrested him.

The jury found defendant guilty of the lesser included charge of attempted burglary. The court imposed the high term of three years, and then suspended execution of sentence, placing defendant on formal probation. Defendant was awarded 336 days of presentence credit.

This appeal followed.

## DISCUSSION

### 1. Specific Intent

Defendant contends there is insufficient evidence of the requisite specific intent for attempted burglary. We disagree.

" 'To determine whether sufficient evidence supports a jury verdict, a reviewing court reviews the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable jury could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Johnson* (2015) 60 Cal.4th 966, 988.) The same standard applies when the prosecution relies on circumstantial evidence. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

The jury found defendant guilty of attempted burglary. "Attempted burglary requires two elements: (1) the specific intent to commit burglary and (2) a direct but ineffectual act toward its commission." (*People v. Mejia* (2012) 211 Cal.App.4th 586, 605; see also Pen. Code, § 459 [every person who enters one of the enumerated premises "with intent to commit grand or petit larceny or any felony is guilty of burglary"].) A defendant's intent to enter a building with felonious intent is rarely provable by direct evidence and must be established from "all of the facts and circumstances disclosed by the evidence." (*People v. Matson* (1974) 13 Cal.3d 35, 41; see also *People v. Bloom* (1989) 48 Cal.3d 1194, 1208 ["Evidence of a defendant's state of mind is almost

4

inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction."].)

In reaching its verdict, the jury was entitled to infer defendant's specific intent "from all of the facts and circumstances shown by the evidence." (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.) The gist of defendant's argument is that the totality of evidence showed only that he made an unsuccessful attempt to enter an open window, did not intend to steal, sought entry only to sleep, did not flee the scene, and was not in possession of any "burglary tools." Defendant contends such evidence does not support a reasonable inference that he intended to commit a theft or other felony upon entering Ms. Finkelstein's apartment.

Defendant's argument not only seeks an improper reweighing of the evidence, but ignores the balance of the record which supports the jury's verdict. Defendant testified he believed the building was vacant because he thought the "no vacancy" sign outside the building was really a "for sale" sign, and because he yelled from the courtyard and nobody answered him. He admitted he did not attempt to knock on any of the doors to the apartments to see if anyone responded. He admitted he did not even check any of the doors or windows on the front of the building, presumably more open to the public, to see if he could enter. Rather, he went around to the back of the building along an alley to attempt to gain entrance. Defendant conceded it was 8:00 at night when he attempted to enter through the window, which he was only able to access after he climbed up onto electrical boxes sticking out from beneath the window. He testified he climbed up only to look inside to see if the apartment was vacant. Ms. Finkelstein testified her window screen was ripped and dislodged and that defendant's foot and leg were already coming through the window when she yelled, causing defendant to jump down.

" 'Burglarious intent can reasonably be inferred from an unlawful entry alone.' [Citation.]" (*People v. Martin* (1969) 275 Cal.App.2d 334, 339; see also *People v. Stewart* (1952) 113 Cal.App.2d 687, 691 ["the crime of burglary does not require that a theft or felony be actually committed . . . forcible entry with the felonious intent to commit theft is sufficient"].) There was ample evidence in support of the jury's

5

conclusion that defendant had the requisite intent when he unlawfully entered Ms. Finkelstein's apartment through her bathroom window. Defendant's attempt occurred at night and in a manner that supports a reasonable inference he was attempting to avoid detection. The jury was entitled to infer a felonious intent, and to discredit defendant's testimony that he only sought a place to sleep.

The thrust of defendant's argument was that the prosecution presented no evidence of intent; a point with which we disagree. To the extent defendant suggests that the jury was required to accept his innocent explanation for attempting to gain entry to the victim's apartment, the argument is equally unavailing. The jury was properly instructed with CALCRIM No. 225 regarding circumstantial evidence of intent, including the jury's duty to find that intent was not proven if the evidence reasonably supported the conclusion that the defendant lacked the requisite intent. However, once the jury has found the defendant guilty, "the presumption of innocence is replaced by the presumption in favor of the judgment, and a reversal can be ordered only if upon no rational hypothesis is there substantial evidence to support the judgment." (6 Witkin & Epstein, Cal. Crim. Law (4th ed. 2014), Appeal § 172, p. 456; accord, *People v. Towler* (1982) 31 Cal.3d 105, 118 [where "jury rejects the hypothesis pointing to innocence by its verdict," the reviewing court is bound by the finding of the jury, if supported by substantial evidence].) As we explained above, the jury's finding of intent is supported by substantial evidence.

## 2. Voluntary Intoxication

Defendant next contends the court violated his rights by precluding his ability to develop his defense of voluntary intoxication. We are not persuaded.

During the course of his direct examination, defendant testified that he had been prescribed psychiatric medications but he was not taking them in June 2014. Defendant said he was self-medicating instead with other drugs. He confirmed that he took drugs on the morning of the incident around 10:00. Defendant contends he was not allowed to develop this testimony further because the court wrongfully sustained relevance objections by the prosecutor to two questions as follows.

6

"[DEFENSE COUNSEL:] Okay. And what drugs did you take the day before you were arrested?

"[PROSECUTOR]: Objection. Relevance.

"THE COURT: Sustained.

"[DEFENSE COUNSEL]: Your Honor, may we approach?

"THE COURT: No. Next question.

"[DEFENSE COUNSEL]: Your Honor, it goes to specific intent.

"THE COURT: Next question."

Then, a few questions later, defendant testified that during the course of his walk that day, he passed by a hospital "that wouldn't take [him] in." Defense counsel asked "[d]id you actually go into the hospital for help?" The prosecutor objected on the grounds of relevance, and the court sustained the objection.

That colloquy concluded the testimony for the day. After the jury was excused, the court spoke with counsel about defense counsel's intended line of questioning. Defense counsel explained that she had asked those questions because she wanted to put into evidence the types of drugs defendant was using up to and on the morning of the day of the incident to establish the defense of voluntary intoxication. The court responded as follows.

"THE COURT: I understood that, counsel. But all you need to put on the record is what you indicated, that he consumed drugs on that day. And you also put on the record he has mental impairment. What drugs it is is irrelevant. What else?

"[PROSECUTOR]: I'm okay with whatever the drugs were on the day of.

"THE COURT: I'm not.

"[PROSECUTOR]: Okay.

"THE COURT: It's an issue of relevancy. You've already put it on the record, and voluntary intoxication has been placed on the record; and, therefore, you've already garnered the instruction. [¶] So what else do you need, because that's your goal; correct?

"[DEFENSE COUNSEL]: Yes.

"THE COURT: There, it is."

7

Defendant's testimony was completed the next court day and defense counsel did not make any further offer of proof as to any additional lines of questioning that she wanted to pursue on the issue of voluntary intoxication.

Since the legislative abolition of the diminished capacity defense, evidence of voluntary intoxication is relevant and admissible only "to the extent it bears upon the question whether the defendant *actually* had the requisite specific mental state required for commission of the crimes at issue." (*People v. Horton* (1995) 11 Cal.4th 1068, 1119; see also Pen. Code, § 29.4, subd. (b) ["Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent"].

Evidence of intoxication, to be admissible, must therefore relate to the defendant's mental state *at the time* the charged crimes were committed. (See, e.g., *People v. Roldan* (2005) 35 Cal.4th 646, 715-716, overruled in part on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22 [evidence codefendant was drunk at time of the crime and that defendant was a habitual user of marijuana did not constitute substantial evidence of defendant's intoxication at the time of the crimes to warrant instruction]; *People v. Horton*, *supra*, 11 Cal.4th at p. 1119 [evidence defendant freebased cocaine the day before the crime is not relevant to voluntary intoxication on the day the crimes were committed and therefore did not support instruction].)

The first question to which the court sustained a relevance objection was directed to what drugs defendant ingested on the day *before* the incident. "The trial court has broad discretion in determining the relevance of evidence." (*People v. Scheid* (1997) 16 Cal.4th 1, 14.) Defendant has failed to articulate any argument for how the court's ruling constitutes an abuse of discretion when the question was not directed to eliciting testimony about defendant's mental state on the evening of June 24, 2014 when the attempted burglary occurred. We find no fault in the court's ruling.

The second question was directed at confirming whether defendant actually sought medical assistance at the hospital he testified he stopped at on his walk that day. Once again, the record contains no explanation or offer of proof about what this line of

8

questioning would elicit that was actually relevant to the narrow issue of defendant's mental state at the time of the charged crime. We are not persuaded there was any error.

Moreover, assuming solely for the sake of argument that the court erred in excluding defendant's answers to those questions, such error was harmless under any standard. Defendant testified at some length and with a fair amount of detail and clarity about what he did on June 24, 2014. He unequivocally stated in response to numerous questions that he intended to enter Ms. Finkelstein's apartment only to sleep because he was exhausted from having walked the whole day. Defendant testified he ingested drugs at 10:00 a.m., but there was nothing else in defendant's testimony that by 8:00 that evening he was feeling anything other than fatigue. The defense theory of the case as presented by defendant's own testimony was not that he was so intoxicated that he had no idea what he was doing and lacked the capacity to form the requisite specific intent to burglarize Ms. Finkelstein's apartment. Rather, the defense theory was that defendant knew what he was doing, and did intend to enter the building unlawfully, but only with the intent to find a place to sleep because he was homeless and was tired. This theory of the case was the focus of defense counsel's closing argument as well. Defendant has therefore not shown any prejudice from the court's rulings.

## DISPOSITION

The judgment of conviction is affirmed.


GRIMES, J.

WE CONCUR:

RUBIN, Acting P. J.


FLIER, J.


9